# REPORTS

OF

## CASES ARGUED AND DETERMINED,

### June Term, 1844.

~~~~~~~~~~~~~~

## BOYETT, ET AL. v. KERR.

1. The judgment of the Judge of the County Court upon the probate of a will, and his decree of final settlement of the estate under the will, cannot be joined in the same writ of error.

2. The judgment upon the probate of a will cannot be reviewed by a writ of error after the lapse of three years, between the judgment and the suing of the writ of error.

3. The proper course·of practice in the County Court in testamentary causes is, for the person producing the will and asking probate to propound the will, to the Court in writing, with the usual facts necessary to be proved, and informing the Court what persons will be entitled to distribution if the will is invalid.

4. In order to make a valid decree for the final settlement of an estate, every party entitled to distribution must be brought in some way before the Court. When persons entitled to distribution under a will die, before a settlement, it is necessary that their personal representatives should be before the Court at the final decree.

5. *Quere*—Whether a statement by the testator, proved in a nuncupative will, that he wanted one sum of money appropriated to the schooling of three of his children, and another sum to the like purpose of two other children, is not to be considered as the creation of a trust, and not as a legacy. *Quere*—Also, whether these trusts or bequests do not lapse in the event of the death of the *cestui que trust*.

2

6. When the construction of a will depends upon extrinsic facts, a Court of error, in reviewing a decree of final settlement made under the will, will intend that the necessary facts were proved to sustain the decision, unless the contrary is shown by an exception.

Writ of error to the County Court of Sumter County.

ON the 28th of October, 1839, Lock Boyett made application to the Judge of the County Court of Sumter, for probate of the last will and testament of Robert Boyett, deceased: whether this application was oral or written does not appear, but a paper is set out in the transcript in these terms:

"On Sunday, the 21st day of July, 1839, I was sent for by my brother, Robert Boyett, who was extremely low at the time with fever: after I arrived at my brother's house, my brother, about twelve o'clock, on Sunday, told me that he had a fine plantation there, and that if not attended to, he asked me, if it would not soon go to rack. I told him it would. He then told me he had made up his mind how he wanted his property disposed of. He said he wanted three thousand dollars appropriated to the schooling of his three youngest children, and fifteen hundred to his two children at Gainesville—that he wished all his property sold and equally divided; and that I could buy Sally (his wife) a place. My brother died about sundown, 23d July, 1839. He stated to me several times, between Sunday and his death, that he should not recover; and on the day of his death, in the morning, he stated to Samuel Swilley and myself that he ought to do something about his estate. Mr. Swilley said no—that he was doing well, and would be about again in a few days. Mr. Swilley thought it best not to say any thing to him about a written will. I thought he was better from Sunday evening till Tuesday morning, and on Tuesday stated to my brother that I must go home to see about some business—he said if I did go, I would never see him again. I then staid.

LOCK BOYETT."

26th July, 1839."

Attest:—SAM'L B. BOYD.

To this is appended an affidavit, sworn to by Lock Boyett, in open Court, on the 14th of December, 1839, in these words: Personally came Lock Boyett, in open Court, and being first

duly sworn, deposeth and saith, that Robert Boyett, now deceased, did speak the foregoing, as therein set forth and expressed, whilst of sound and disposing mind and memory, on the day and date therein enumerated.

On the application for probate it was ordered that the clerk should cite the widow of the deceased, and also Missouri, and Jackson Boyett, to appear at the next term of the Orphans' Court, on, &c., and that Price Williams be appointed guardian, *ad litem*, to represent Green, Amanda, Mary J., John and William, all minor heirs of the deceased. Citations accordingly were issued, and at the return day the parties cited appeared, and the proceedings were continued until the 7th day of December. It was also ordered that the clerk should issue a *venire facias* to summon a jury "to decide upon the legality of the nuncupative will desired to be established by Lock Boyett, as the same is (was) contested by Jackson Boyett, one of the heirs of said deceased."

On the 7th December, the record recites that the parties came by their attorneys, as well as a jury who were sworn "to speak the truth upon the issue," but a juror was withdrawn and no verdict rendered, and then the case was continued until the 14th of the same month.

The entry of the proceedings on the 14th of December, recites the coming of the parties, contesting an instrument purporting to be the nuncupative will of Robert Boyett, deceased, to wit, Lock Boyett, the brother of the deceased, and Jackson Boyett, son and heir of said deceased, by their attorneys, and also Price Williams, the guardian, *ad litem*, to the minor heirs of the deceased, to wit, Green, Amanda, Mary J., John and William Boyett, which instrument bears date 26th July, 1839, signed by Lock Boyett, and attested by Samuel B. Boyd. A jury was then empannelled and sworn to speak the truth upon the issue joined, who after hearing testimony, the argument of counsel, and the charge of the court, retired, made up, and reported the following verdict : " We, the jury, do find it the will and the wish of Mr. Boyett that his property should be disposed of as he told his brother." Whereupon it was ordered by the Court that said writing be probated as the nuncupative and last will and testament of Robert Boyett, deceased, and recorded. Sally Boyett, widow and relict of said deceased,

waived the provisions made for her in the will, and claims her dower under the laws of the State. She also relinquished her right to administer, and as well as Jackson Boyett, son of the deceased, agreed that Lock Boyett should be appointed administrator. The latter was therefore appointed administrator with the will annexed.

Lock Boyett afterwards died, having first made a will wherein he appointed John W. Kerr, his executor, and on the 16th day of October, 1840, Kerr was appointed administrator *de bonis non, cum testamento annexo,* of Robert Boyett, deceased.

Kerr stated his accounts for a final settlement, and due notice having been given, no objection was urged by any person interested. The Court then proceeded to distribute the assets of the estate, which appeared to be 19,057 45-100 dollars. From this was taken 2,750 dollars, which the administrator, by order of the Court, paid to the clerk, to be paid to Wm. J. Steele, guardian of Amanda, William and John Boyett, minor heirs of the deceased, in compliance with the will of the deceased, for tuition, &c.; which sum was by the said clerk paid over to the said Steele, and thus left a balance due from the administrator of 16,307 45-100 dollars. This sum was then distributed between the six heirs, making a dividend to each, of 2,717 90-100 dollars. These six heirs, as shown by other portions of the judgment entry are Jackson Boyett and Missouri Boyett, of full age, and Green, Amanda, William and John Boyett, minors; the first represented by Samuel Swilley, and the last by William J. Steele, as guardians. Payment having been made of the sum distributed to each heir, the administrator was discharged from his administration bond.

The writ of error is sued out in the names of all the distributees, and it is stated in the writ that Mary J. and Emily Boyett, two of the children of the decedent, Robert Boyett, have died since his death. Amanda, John, and William Boyett, three of the distributees, by their guardian, Wm. J. Steele, refuse to join in the assignments of error, and crave a severance, but consent that the writ may be prosecuted on behalf of the other distributees.

The errors assigned are :

1st. That it does not appear that the will was made at the

habitation of the deceased, or where he had resided for the space of ten days or more next preceeding the making of the will.

2d. That the property bequeathed being more than one hundred dollars, it was necessary to show that the testator called on the persons present, or some of them, to take notice that it was his will, and this no where appears.

3d. That the pretended will is altogether void and uncertain.

4th. That the probate of the will was decreed on the finding of a jury, when the verdict does not sustain the will, nor authorize the decree of the court.

5th, That by the final decree the estate is not equally distributed according to the provisions of the will, but the sum of 2,750 dollars before distribution, is decreed and paid to Amanda, William, and John Boyett, and only the residue is divided.

6th. That it does not appear whether the said Amanda, William and John were the three youngest children of the deceased, or whether these three include also the two at Gainesville, or whether some of each class are included, or one of either.

7th. That the distribution decreed is not according to the will.

8th. That it does not appear that distribution was decreed to those who are legatees under the will.

9th. That the decree is in other respects informal and insufficient.

10th. That the will is void for uncertainty.

Bliss and Baldwin for the plaintiffs in error, without waiving the assignments with respect to the probate, insisted that the only construction to be given to the terms of the will, is, that the testator intended his estate should be equally divided between all his children. The ambiguity is not explained by the context, and, unless there are two classes of children referred to, as entitled to more than the others, is *patent* and therefore not subject to explanation.

There is nothing in the will to indicate it was the testator's intention that the sums named, should be *appropriated* previous to distribution; but the context rather shows that he wished the sums applied to that specific purpose out of their respective shares. Again, the will may be considered as entirely

void on account of its vagueness and uncertainty. Those clauses are void and rejected where the words are so general and uncertain that the testator's meaning cannot be collected from them. [Lovelass on Wills, 282.]

METCALF and STEELE, contra.

GOLDTHWAITE, J.—In the present case an attempt is made by the assignment of errors to connect the judgment admitting the will to probate, with the subsequent decree for a final settlement. Our opinion is that this course cannot be be pursued, inasmuch as the probate is in itself a final judgment, entirely independent of, and distinct from the subsequent administration. In many cases the parties to contest the will would be entirely different from those interested in a distribution under it; and even where the persons are the same, yet the interests of some must necessarily be different under the will from what it would be, if it was out of the way. These reasons are conclusive to show the two decrees cannot be examined under the same writ of error.

2. It might in this case, where the legatees under the will are the same persons as would have been distributees of the estate, if there was an intestacy, perhaps be allowed to the parties to elect whether they will, under this writ of error, proceed to examine the errors which affect the probate, or those supposed to be connected with the final distribution; but if they were permitted to elect the former, the writ of error would necessarily be dismissed, because it is barred by the statute of limitations. The judgment for the probate was rendered on the 14th December, 1839, and the writ of error was sued out in May, 1843. Consequently more than three years had then elapsed from the time of the probate. A writ of error to reverse a judgment of the Circuit Court may be sued out at any time within three years after its rendition, and not afterwards. [Clay's Digest, 309, § 17.] Writs of error lie from any judgment or order final of the Judge of the County Court to the Circuit or Supreme Courts, in the same manner as upon judgments of the Circuit Court. [Clay's Digest, 297, § 4.] The effect of the last enactment is to bring writs of error from the County Courts within the bar of the statute first recited, and thus force the Court to examine into the errors of the probate, even if such was the election of the plaintiff in error.

3. We cannot but lament that the course of practice in our County Courts in testamentary causes is so exceedingly inartificial, as frequently to produce general inconvenience to the suitors themselves as well as embarrassing questions to appellate courts; and this record is certainly no exception to what seems to be the general rule. Here we have to grope through the whole case from beginning to end to ascertain who the parties were who should have been before the Court at the commencement of these proceedings. How much more simple and convenient, to say nothing of it as being the appropriate course, would it be for the person asking probate of a will to propound it in writing, with the facts necessary to be proved to make it valid; setting out the names, description and residence of those entitled to the estate as heirs or distributees, and praying that the whole may be admitted to probate. On such an application citations could be issued with certainty, when in its absence all is doubtful or dependent upon the extra-official information of the Court. But with this at present we have no other concern than to call the attention of practitioners and County Judges to the defective practice of these Courts, in the hope that the remarks may, to some extent, cure the evil which now exists.

4. The decree for final settlement is erroneous for the want of the necessary parties, and this is a defect which we are astonished to notice, independent of any assignment of error, because it shows a total absence of jurisdiction, in the Court to render any decree whatever. Every party entitled to distribution must necessarily be before the Court in some way before there can be a valid final settlement. It appears when the whole record is considered, that the testator, besides a widow, left eight children, all of whom, either by the will or by statute, were entitled to some portion of the estate. It may possibly be surmised the widow is dead, and it is stated in the writ of error that two of the children had died since the death of the testator. In the first proceedings had, the widow and seven children are named. It is immaterial when the widow, (if in truth she be dead,) or three children died. If the deaths happened after that of the testator, their personal representatives were necessary parties to the final settlement of the estate, inasmuch as they were severally entitled to portions

of it, which portions at their respective deaths, instead of lapsing into the general fund became the subject of distribution as parts of their several estates. The reasons for thus making the personal representatives of the widow and children parties to the proceedings will be obvious, when it is considered that it may be possible, that all the surviving children may not be thus related to the widow, and it may also be possible, that some of those who survive are not of the whole blood with one or both of those deceased; in either of which events a different sort of distribution would obtain from that which would be proper under the will; but the conclusive reason is, that the survivors have no interest under the will in the portions of those who are dead.

5. However doubtful we should feel that this is a valid nuncupative will under the statute, we are bound as an appellate Court so to consider it upon error; whether it could yet be questioned in a proceeding in equity, to set it aside, is a question not now to be examined. We should therefore, if it was necessary for the determination of the rights of the parties, proceed to give our views of the construction it ought to receive; but as this, from the condition of the case is unnecessary, we shall content ourselves with remarking, that it may be questionable whether the bequests which are supposed to be specific, are any thing more than mere trusts imposed on the conscience of the executor. It may likewise deserve consideration whether, if the children for whose benefit these trusts are created should die before the sums should be expended pursuant to the will, the unexpended surplus would not remain as a part of the estate. In this view too it may call for consideration, whether the County Court has any jurisdiction over the trust funds, as if they had such, there seems to be no jurisdiction in that Court to control them. With respect to the children who are entitled to the benefit of these clauses in the will, it is evident the construction depends upon extrinsic facts. 3,000 dollars are appropriated for the schooling of his three youngest children, and 1,500 dollars for his two children at Gainesville. If the children at Gainesville were not of his three youngest, but were older than three others, the knowledge of their circumstances would enable every one to give a satisfactory construction to that which without the information is

uncertain. But let it be supposed that two of his three youngest children were at Gainesville when the will was made, it cannot be doubted his intention was, that out of three, two should receive 750 dollars, and the other of the three 1,500 dollars. Without such a construction under such circumstances the whole clause would be incapable of any signification whatever. The extrinsic facts necessary to the construction of the will do not appear upon the record, but we should hesitate to reverse the decree if this was the only error complained of and ascertained, because it was competent for the parties by exception, to have set out what the facts were, if the proper construction was not given upon the will in connexion with them; and having failed to do so, we should incline to sustain the judgment, upon the presumption that the facts were such as to warrant it; and such would be the case, if the three younger children were at Gainesville and the other two elsewhere, and if one of each class were dead.

For the error we have noticed with respect to the parties, the judgment decreeing a final settlement, must be reversed and the cause remanded, that the parties may take such course as they shall be advised.