## SPEIGHT v. KNIGHT.

1. The removal of a guardian from the State is a sufficient reason to displace him from the trust, whenever in the discretion of the court he as a nonresident would not have been appointed in the first instance.

2. When a guardian is sought to be removed for this cause, he is entitled to fourteen days' notice of the application, and if personal service cannot be made of the citation, he may be called on by publication.

3. The validity of a guardian's appointment cannot be called in question in the subsequent proceedings by him for a settlement, or assigned as error on the record of settlement.   Error in the appointment of a guardian, &c. can only be reversed in a direct proceeding on the appointment.

4. In proceeding against a guardian, &c. who has removed from the State without making a settlement, he is entitled to three months' notice by publication of the day on which he is required to state his accounts.

5. *Quere*—Whether under the statute when a guardian, &c. has removed from the State, the orphans' court can proceed to decree the account stated by it at the same term when it is stated; or whether the guardian, &c. is not then to be cited to a final settlement as in other cases.

Writ of Error to the Orphans' Court of Henry.

THE proceedings of the orphans' court connected with the questions raised by the assignments of error, may be thus stated :

On the 3d March, 1845, the court made an order appointing Knight guardian of Josiah A. Cawthorne, reciting as the cause for doing so, that Speight, the former guardian, had removed out of the State. At the same time, the newly appointed guardian having given the required bond, prayed that Speight might make a final settlement of his accounts with the ward. On this application, an order was made setting the 17th of April, 1845, for auditing and examining the accounts, "at which time all persons interested might attend and object if they saw proper." It was also ordered that notice be given to certain named persons, as sureties for Speight, and to another person as the executor of one who in his lifetime was also one of the sureties, to attend at that time and show cause, if any they could, against the order and decree which the court might then make in the premises. Also that notice be given by publication in Eufaula until the day of hearing, and by posting the order, &c.

The next order which appears in the cause was made the 23d of June, 1845. This recites the previous proceedings in regard to the appointment of Knight; his prayer that Speight, the former guardian, should state and settle his accounts with the ward. This further recites, that the order then made was, "that on the 17th of April, 1845, the accounts would be audited and reported for final settlement, to take place on the fourth Monday of June, when and where the parties could attend," &c.

It then proceeds that "on this day came Richard Knight, guardian, &c. and prays that the accounts of Moses K. Speight, former guardian, as stated by the said court on the 17th of April, 1845, and reported to this court for allowance, be allowed; and it appearing to the satisfaction of the court that proof of the intention of said guardian to have his accounts so stated as aforesaid and presented to the court for allowance at the present term, was duly posted up in three public places in the county, and [published] in the Eufaula Shield, a newspaper, &c. for forty days previous to the present term. And no exceptions being made to the same, and

it appearing that Moses K. Speight, former guardian as afore-
said, is chargeable," &c.   The court proceeds to render judg-
ment against him for $1453 58, the balance due on the ac-
count so stated in favor of Richard Knight, the present guar-
dian of the minor, and awards execution for that sum.

If any proceedings were had by the court on the 17th
April, 1845, they are omitted from the transcript, and there
is nothing from which it can be inferred, either that Speight
himself stated any accouut, or that the court did so at any
time previous to the 23d June, 1845.

Speight now prosecutes this writ of error, and here assigns
that the orphans' court erred—

1. In removing him from the guardianship.

2. In proceeding at the suit of Knight instead of the mi-
nor.

3. In not giving any notice to the party that his account
would be stated and audited for final settlement, and in not
giving any other notice.

4. Because the sureties were notified by the publication,
instead of the guardian.

5. Because no sufficient reason appears for the judge to
state the account, and because the account was thus stated.

6. Because the notice of final settlement was insufficient,
and several other assignments of a similar nature.

BELSER and BUFORD, for the plaintiff in error.

No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—1. We are not aware of any stat-
ute which declares the removal of the guardian from the State
shall be a ground for displacing him; and there are enact-
ments which allow non-resident guardians to secure the es-
tates of their wards within our jurisdiction as well as others,
which evidently contemplate that a resident guardian may on
receiving the assent of the orphans' court, remove the estate
of his ward elsewhere, under certain prescribed conditions.
[Digest, 170, § 17, 18; Ib. 171, § 20, 21.]   In the absence
of specific legislation on this subject, it is possible the or-
phans' court, in its exercise of general power over this sub-
ject, may possess the power to commit the guardianship of a

minor to a non-resident under peculiar circumstances, but the general rule doubtless is to appoint a resident guardian. This seems to be indicated by the act of 1843, which evidently points to the removal of an executor, administrator or guardian, as a circumstance which will authorize the orphans' court to call the individual to a final settlement of his trust. [Digest, 230, § 47.] That court is invested also with the general power to displace a guardian on sufficient cause being shown. [Ib. 267, § 4.] Hence we conclude, that although the non-residence or removal from the State of the guardian is not a matter which imposes the duty on the court to displace him absolutely and in all cases, yet it is a ground for removal whenever in the discretion of the court a non-resident guardian would not be allowed in the first instance.

2. Conceding, then, that the orphans' court has the power to displace a guardian on the ground of his having removed from the State, the question arises, what is the proper course of proceeding to remove him. There is a single instance in which the court is permitted to displace an executor, administrator or guardian without notice, and that is when he is charged with a breach of duty, and it is made to appear he has removed from the State or otherwise endeavored to elude the service of process on the complaint. [Digest, 221, § 5.] In general, when the court proceeds to the removal of a guardian for any cause not covered by the enactment just referred to, it is requisite to give him fourteen days' previous notice by citation to appear and show cause why he should not be displaced. [Digest, 267, § 5.] Under these statutes we incline to think the proper course is to state a complaint in writing against the guardian, specifying the grounds on which his removal is sought, on which the necessary citation is issued, and if not made known by personal service on the ground, is not within the provisions of the statute, which warrants a summary removal without notice, the service would be made effectual by publication of the order to appear.

3. It does not appear here that notice was served on the guardian, that publication was made, or that there was proof to the court of any breach of duty warranting a removal without notice, and the appointment of the succeeding guardian,

is clearly irregular; but this, in our judgment, is a matter which can be revised only in a direct proceeding with reference to the appointment.   The validity of the appointment of Knight is entirely collateral to the settlement between him or his ward and the former guardian.   In all testamentary and guardianship causes the appointment of the administrator or guardian is a distinct act of the court, which cannot be collaterally impeached, and which, however irregular, is not open to inquiry in the subsequent proceedings.   This precise question was thus ruled in regard to the probate of wills in 7 Ala. Rep. 9.

4. Viewing the proceedings in this cause as a settlement of the guardian's account by the orphans' court, it is evident there is no conformity with the statutes.   The first section of the act of 1843 provides, that when any executor, administrator or guardian shall have removed beyond the jurisdiction of the court granting the letters, without having settled his accounts, the court may on the application of any one interested, cause notice to be given by advertisement, requiring the executor, &c. to file his accounts and vouchers for settlement at a regular term of the orphans' court, to be holden not less than three months from the date of the notice.   In the event of the failure of the executor, &c. to appear and file his account and vouchers for settlement, the judge is required to state the account on the best information he can obtain, "and proceed to settle and decree on the same as is now required by law : *provided*, that if said executor, &c. shall appear and file his account and vouchers for settlement, and pay all such costs as may have accrued in consequence of his defalcation at any time before the final hearing of the account stated as aforesaid, and decree thereon, it shall be the duty of the court to set aside the proceedings aforesaid, and to audit and settle the account filed by the executor, &c. in manner and form as now required by law.   [Digest, 230, § 47.]   And from this it will be seen that the three months' notice required to be, was not given.   The order for settlement was made the third of March, and the day set for the settlement was the 17th of April.   It is true, the account was not stated until the 23d of June afterwards, but this circumstance cannot validate the

59

proceedings, which are entirely irregular for the omission of the statutory notice.

5. In proceeding under this section of the statute, it deserves consideration whether a final decree can be made at the same term as that at which the account is stated by the court, and also whether, when the account is stated, the executor, &c. is not to be cited, as well as all others interested in the final settlement, as in other cases where the account is stated by the executor, &c. It will be seen, we think, that there is considerable difficulty in the construction of this section, as the proviso seems to indicate the right of the executor, &c. to set aside the proceedings at any time before a final decree—a privilege which would be of little value, if the final decree was a consequence of stating the account. Independent of this, there seems good reason to suppose a publication is necessary, because others than the executor, &c. may be concerned in the final adjustment of the account, besides the party at whose instance the proceeding is had. We throw out these remarks, to invite the attention of suitors interested in the proper construction of this statute, without intending to conclude any thing by these *queries.*

The result of what has been said is sufficient to indicate that this proceeding is fatally defective, and therefore the judgment is reversed, and the cause will not be remanded, inasmuch as the first step is defective. It is scarcely necessary to advert to the form of the judgment in the name of the guardian instead of the ward, as that is covered by repeated decisions.

Judgment reversed.