## DORMAN, GUARDIAN, vs. OGBOURNE.

1. The Orphans' Court, that has jurisdiction of the person and estate of a minor, has the exclusive authority to appoint his guardian; and the appointment of such guardian by the Orphans' Court of a different county is void.

2. When an Orphans' Court takes rightful jurisdiction of a minor and his estate, it cannot be divested of it, except in cases and under proceedings provided for by the act of the 13th February 1843, and the act of which that is amendatory.

Error to the Orphans' Court of Chambers.

ALLISON, for plaintiff in error:

1. The record and proceedings of the Orphans' Court of the county of Montgomery, appointing the guardian, are void, it not appearing that the minors were residents of that county. Clay's Dig. 226, § 27; ib. 267, § 1; McCartney, et al. v. Calhoun, et al. 11 Ala. 110; 8 Porter, 375; 2 Ala. 533.

2. There cannot be two guardians acting at the same time by appointments made in different counties.

BELSER & HARRIS, for defendant:

The defendant in error insists that the judgment of the Orphans' Court of Montgomery county appointing the defendant in error, was conclusive on the right of the defendant in error to act as guardian. That the only means in which the appointment of the defendant in error can be enquired into would be by a direct proceeding to have the letters of guardianship revoked by the court granting them, or by a revising court.—Speight v. Knight, 11 Ala. Rep. 455.

PARSONS, J.—The case is briefly this: The plaintiff in error was appointed by the Judge of the Orphans' Court of Chambers county guardian of two minors, Sanders F. Walker and George W. Walker, and at a subsequent time, the defendant in error was appointed by the Orphans' Court of Montgomery county, by separate orders, guardian of each of the minors. This was done while the plaintiff in error was acting under his appointments, and without notice to him. The Judge of the Orphans' Court of Chambers, after this, on the application of the defendant in error, removed the plaintiff from his trusts and revoked his letters of guardianship.

I pass over two questions, which it is not necessary to decide—first, whether or not the defendant in error could join both of the appointments in one proceeding to displace the plaintiff; and secondly, whether the appointments of the defendant were not void, for the want of notice to the plaintiff in error. The question whether the appointments of the defendant in error are not void, on the ground that the Orphans' Court of Montgomery had no jurisdiction of the minors or of their estates, is the question I will examine, and as in general, it is a highly important question, I will state my views at some length.

It is evident from our acts, that the Legislature had a purpose to define questions of jurisdiction among the several Orphans' Courts in relation to the estates of testators and intestates. This has been so well done that a case can hardly arise in which there could be much difficulty in ascertaining to what particular Orphans' Court it belongs. But it is not so clear in respect to guardianship. It does not appear to have been a leading object with the Legislature to distribute this

Dorman, Guardian, v. Ogbourne.

jurisdiction among the Orphans' Courts, according to the circumstances of the cases. But although it is difficult to find in the language of the general acts any clear declaration to that effect, yet there are particular enactments tending to show this general intent. By the act of 1822, Clay's Digest, 269, § 10, any father may devise the custody and tuition of his infant child to whomsoever he will. The 13th section of this act says, if any guardian (alluding to testamentary guardians) shall fail to appear in the County Court, where such last will shall be proved and recorded, (meaning the will of the minor's father) within the space of six months thereafter, he may be summoned to declare his acceptance or renunciation of the trust. It appears by this, that the County or Orphans' Court of the county, in which the father's will is proved and recorded, shall have jurisdiction of guardians appointed by the will. And further, it appears by the same section, that if such testamentary guardian shall renounce, " the said court may and shall proceed to appoint and qualify some other person or persons to the guardianship, as if no such appointment of a guardian or guardians had ever been made." There is then no doubt about the particular court that is to have jurisdiction of testamentary guardians, or of such as the court may appoint instead of them.

It is very clear that a testator may appoint guardians for some of his children and not for the rest—that might happen if the testator desired to have one or more of his children instructed in a particular business. But it is difficult to imagine that the testator could wish, or that the Legislature could intend, in general, that different and perhaps distant courts should have the appointment of the guardians of the same family of children, without any sort of necessity for it. The 22d section enacts, that whenever there may be any minor in any county, for whom no suitable person will act as guardian, the judge of the County Court shall appoint the sheriff of the county as guardian. The language of this act is general, and includes all minors within the county, for whom no suitable person can be procured to act as guardian. Their residence in that case is the ground of jurisdiction, and this jurisdiction is clearly given to the judge of the County or Orphans' Court, within whose county the Orphan is. This act, however,

53

could not include minors who were transiently within the county, or such as had guardians rightfully appointed in another county, there being no necessity for any more. But, subject to these qualifications, the act includes, or may include all minors, and it gives jurisdiction to the court of the county where the minor resides. The 26th section, according to the Digest, enacts, that the judges of the several County Courts are to appoint guardians for the estates of those minors in their respective jurisdictions, whose fathers may be still alive, but who have separate estates devised to and settled upon them.

· It may be collected from the acts referred to, that the Legislature intended to give jurisdiction of minors and their estates to such of the Orphans' Courts as might be entitled to it according to the circumstances of the cases. In some cases the court, where the will is proved, has exclusive jurisdiction, in others, and generally, I think, the court in which the estate of the father, whether testate or intestate, is administered, has jurisdiction of the minor children, and such jurisdiction is exclusive. In the county in which these courts are held the children usually reside. If some of them have a distinct residence in another county, that, perhaps, might alter the case in most instances.

But there is another general act which I will notice.—Clay's Digest, 302, § 28. According to this, the judges of the several County Courts shall have authority, within their respective jurisdictions, to take cognizance of all matters concerning orphans and their estates, and to appoint guardians, &c. After so many evidences in the acts of a general intent to distribute these cases according to their circumstances among the different Orphans' Courts, I am inclined to think that the words "within their respective jurisdictions," in the last cited act, may be applied to the subject matter of the jurisdiction, and that, therefore, their jurisdiction is limited by that act to all matters concerning the orphans and their estates within their respective jurisdictions.

After a careful examination of the acts cited, to say nothing of some others that I might have brought to view, I think it is clear that the Legislature did not intend to give a general concurrent jurisdiction to all the Orphans' Courts of the State over guardianships and orphans and their estates. Some one

Dorman, Guardian, v. Ogbourne.

of them has jurisdiction of every case of the kind that can arise, in general, and as that is evident, the object of the Legislature is accomplished. There can be no case without remedy. The court having jurisdiction of any particular orphan and his estate has it exclusively. If all the Orphans' Courts had concurrent jurisdiction of any one case, the very worst abuses might follow. They would be too numerous to mention, but I will suggest one. A citizen of one of our most southern counties might die, leaving his estate and his family all there. It is very clear that his estate could be administered no where else; but if the Orphans' Courts are all to have concurrent jurisdiction of his children, their guardians might be appointed in some of the northern counties, without a single necessity for it, and perhaps, very much against the interest of the minors.

The English law affords very little aid in the investigation of this question. There, the Court of Chancery has properly the jurisdiction to appoint and remove guardians. For this reason questions of jurisdiction cannot spring up there among the inferior tribunals. But it is otherwise in relation to the grant of administrations. If administration be granted there by a court, not having the rightful jurisdiction, it is generally void. For instance—if an intestate have *bona notabilia* in two dioceses, within the same jurisdiction, neither diocesan has power to grant administration, but it should be done by the metropolitan of the province, and in such case the grant by the diocesan is void.—Stokes, adm'r v. Bates, 5 B. & C. 491, and see 1 Saunders, 275, notes. And it has been held in N. Carolina, that when a citizen of that State died, letters of administration of his estate, granted by the court of a county where he never resided, nor had any assets at the time of his death, were void. Collins v. Turner, N. C. Term Rep. 105; Hyman v. Gaskins, 5 Iredell Rep. 273. The same thing no doubt would be held here; and it would be difficult to make a distinction between the appointment of an administrator and a guardian in this State, so far as the present question is concerned; for they are both appointed by the Orphans' Courts, and, in both cases, it is necessary that any one of those courts, acting on these matters, should be confined to the cases that come within its particular jurisdiction.

Dorman, Guardian, v. Ogbourne.

But there is a further view of the general subject that seems to be appropriate to the case before us. I think it results from our legislation, that if a particular Orphans' Court having jurisdiction at the time of an orphan and of his estate, appoints a guardian of them both, that court has the exclusive jurisdiction afterwards, and there is no authority for another Orphans' Court either to remove such guardian or to supersede him by a new appointment. This is directly contrary to the opinion of the Court of Appeals of Kentucky, in Montgomery v. Smith, 3 Dana, 599. That opinion is no doubt consistent with the laws of that State, but I think it is opposed to ours. Here, the guardian is appointed by the proper court—he takes the oath and gives bond—he may be ordered to give further security; he returns to that court an inventory, the court audits his accounts and reports them to the next term for allowance; orders sales of the estate of the ward in some cases—preserves all documents, which may be evidence afterwards, and finally makes a decree on final settlement, which is to have the effect of a judgment, and on which the ward may take out execution against the guardian, and if that is returned without satisfaction, can have an execution from the same decree against the guardian's sureties. It is, therefore, very clear that when an Orphans' Court takes rightful jurisdiction in these cases, it has a right to go entirely through with them, and that another Orphans' Court cannot take this jurisdiction away. It is very true, that a minor, becoming fourteen years of age, may choose a guardian, and that guardian will supersede the previous guardian, but this choice must be made in the court which has already possession of the minor and his estate. That court may displace the guardian first appointed, in other instances also, and appoint another. As to the case before us, we think the appointments of the defendant in error by the Orphans' Court of Montgomery were void, because that court does not appear to have had any jurisdiction, and that the Orphans' Court of Chambers consequently erred in removing the plaintiff in error and in revoking his letters of guardianship. The choice of the elder of the two wards could have no effect in this case. The contest was between a guardian claiming under a void appointment and one whose appointment we infer was regular and rightful.

Let the order and decree of the Orphans' Court of Chambers be reversed, and the plaintiff in error will recover the costs of this court and of the court below against the defendant. I have examined the case of Speight v. Knight, 11 Ala. Rep. 461, cited by the counsel of the defendant in error. There, the second guardian was appointed by the court in which the first was appointed—by the court which had jurisdiction of the first guardian, of the ward of and his estate. If the appointment of the second guardian, without notice to the first, in that case was not void, it does not follow that the appointment of the second guardian in this case is not void, for in this case, it does not appear that the wards ever resided in Montgomery, or had any estate there. The evidence offered upon this point was in effect nothing. The proceeding by which the defendant in error was appointed in Montgomery was *exparte*, and without notice to the plaintiff, who was therefore no party to the proceeding, nor subject to the jurisdiction, he living in another county, in which he had been appointed guardian of these minors.

The act of 13th February 1843, and the act to which that is an amendment, (Clay's Dig. 271, §§ 20, 21, 25,) make, in very special cases, provision for the removal of the property of the minors. It is possible that cases of the appointment of guardians in a different county might arise, under these acts, which would form exceptions to the principles of this opinion. But it does not appear that the present case is within those statutes, or that it was proceeded in under them.