[Bean, Adm'r, v. Chapman et al ]

# Bean, Adm'r, *v.* Chapman *et al.*

### *Action against Sureties on Bond.*

1.   *Demurrer; rulings on, how must be shown.* —Rulings upon demurrer will not be revised, unless shown of record on the minutes; but it is not necessary that such ruling should appear in the final ·judgment entry, if the ruling appears from a separate, independent entry on the minutes.

2.   *Interest; when recoverable.*—Interest is not recoverable on a debt due by a citizen of one State to a citizen of another State, during the period their respective countries are at war, as all unlicensed intercourse between them is forbidden ; but where the payee of a note and the sureties thereon are residents of the same country, they may lawfully make payment and stop interest; and they are liable accordingly in a suit against them, though, by reason of their principal being an alien enemy of the creditor, the latter could not recover interest of the principal in a direct suit against him.

3.   *Same.*—In such a case the law reduces the principal's liability, without the fault or procurement of the creditor ; and the principal's defense against recovery for interest is a personal defense, not available to the surety, unless he also have a personal defense.

4.   *Probate judge; incompetency of, manner in which duties of must be performed by register.*—-When the Probate Judge is incompetent to act in any matter of administration, the statute provides that his duties shall be discharged by the Register in Chancery, who, upon proper certificate, &c., becomes as to such administration Probate Judge *pro hoc vice,* and continues such while the disqualification of the judge continues, and thereon the jurisdiction of the Probate Judge ceases, and the register may appoint an administrator, or make other needful orders ; but the record of his acts is kept in the Probate Court, the judge of which is the custodian of the record, and the proper officer to certify a transcript of such proceedings ; the Register in Chancery as such has no authority to certify such proceedings.

5.   *Administrator de bonis non; presumptions as to order appointing.*—On collateral assault upon an order appointing an administrator *de bonis non,* it will be presumed that the authority of the administrator in chief had ceased, when all the evidence on that subject is the transcript of the proceedings introduced (which does not purport to set out all the record of the administration in chief), showing merely the order appointing them ; that they had filed accounts and vouchers for a final settlement ; that the Judge of Probate was incompetent, and therefore transferred the account and settlement to the Register in Chancery, and that the latter more than a year afterwards appointed an administrator *de bonis non*

APPEAL from Madison Circuit Court.

Tried before Hon. L ·uis WYETH.

This was a suit brought by appellant, Benjamin F. Bean, as the administrator *de bonis non* of the estate of Lawson Garner, deceased, to enforce the payment of a certain bond executed by one D. L. Lakin, as principal, with the appellees, Reuben Chapman and Septimus D. Cabaniss as his sureties, on the 27th day of January, 1860, and payable to appellant's intestate twelve months after date.   Lakin is not sued in this

action.   The defendants filed eleven pleas :   1. That they do not owe the debt ; 2. Failure of consideration ; 3. Payment ; 4. That plaintiff is not and never has been administrator *de bonis non* of Lawson Garner ; 5 and 6 pleas substantially the same as plea number 4. 7th, 8th and 9th, that as to the interest claimed on said bond from the 27th of January, 1861, to the 2d day of April, 1866, the defendants aver and plead that they signed said bond as the sureties of said Lakin, who was the principal obligor, and which fact was well known to plaintiff's intestate, that on the said 27th day of January, 1861, the said Lakin was a resident and citizen of the Territory of Kansas, and continuously so remained until the 2d day of April, 1866 ; that said Lawson Garner, plaintiff's intestate, was a resident and citizen of the county of Morgan, and State of Alabama, from the 27th of January, 1861, to his death in 1863, and that the plaintiff and his predecessor in office both resided in said county of Morgan ; that the defendants were residents of Madison county, Alabama, which adjoined Morgan county, Alabama, between said dates and since ; that from the 27th of January, 1861, to the 26th of April, 1866, war existed between the United States and the Confederate States, and all business intercourse ceased and was prohibited between the citizens of said sections ; that the State of Alabama, in which plaintiff's intestate resided, adhered to and formed part of the Confederate States, while the Territory of Kansas in which said Lakin resided, adhered to and formed part of the United States, and that during that time neither plaintiff or his intestate had any agent within the limits of the United States who was authorized to receive payment from Lakin ; that Lakin had no agent within the limits of the Confederate States who was authorized to pay said bond for him, and that, consequently, no interest could be claimed during that time.   The 10th plea, after craving *oyer* of the letters of administration to Bean, set up, that before the date of said letters, the Probate Court of Morgan county had granted letters to Thomas D. Garner and Benjamin F. Bean, both of whom are now living and have never resigned, nor have they been removed from their administration, and their administration of said estate remains unrevoked and unrescinded by any order of said Probate Court. The 11th plea, after craving *oyer* of Bean's letters, sets up, that they are issued by H. A. Sharpe, Register in Chancery, sitting as Judge of Probate ; and that he had no authority to grant said letters.   The letters to Bean purport to be letters of administration in chief, and are granted by H. A. Sharpe, Register in Chancery, sitting as Judge of Probate of Morgan county, on the 2d day of August, 1871.   Issue was

[Bean, Adm'r, v. Chapman et al.]

taken on the 1st, 2d, 3d, 5th and 6th pleas. The fourth plea was demurred to as stating a conclusion of law, and the demurrer being overruled, the plaintiff filed a replication to the 4th, 10th and 11th pleas, which recited the appointment of plaintiff and one John D. Garner as administrators in chief, on the 24th day of November, 1863; that on the 6th day of June, 1870, the plaintiff and said Thomas D. Garner, as such administrators, filed their accounts and vouchers for a final settlement; that the Judge of Probate was incompetent to act in said settlement, on account of being the brother-in-law of said administrators, and that the court had ordered that the account and settlement be transferred to the Register in Chancery of Morgan county; that after said transfer of said administration, the plaintiff and said Thomas D. Garner resigned as such administrators; and on the 2d day of August, 1871, the said Register of said Chancery Court, sitting as Judge of Probate of said county of Morgan, appointed plaintiff administrator *de bonis non* of said estate, who gave bond and qualified according to law, and issued to plaintiff the letters set out upon *oyer* in the plea of defendants. Issue was joined on this replication. On the trial, the plaintiff offered in evidence his letters of administration, in connection with the records from the Probate Court of Morgan county, and from the Register in Chancery to whom the administration of plaintiff and Thomas D. Garner was transferred, to prove the fact that he was administrator *de bonis non* of the estate of said Lawson Garner. The record from the Probate Court set out the appointment of plaintiff and Thomas D. Garner, as administrators, on the 24th day November, 1863. The following record was also offered:

"State of Alabama, } Probate Court, June 6th, 1870.
    Morgan County. }

This day came Benjamin F. Bean and Thomas D. Garner, administrators of the estate of Lawson Garner, deceased, and filed with the judge of said court their accounts and vouchers for a final settlement, and the judge of said court being incapacitated to act in the matter of said settlement on account of being a brother-in-law to said administrators; it is ordered that said account and settlement be transferred to C. C. NeSmith, Register in Chancery for the 6th District, Northern Chancery Division of the State of Alabama."

Appended to this record was the following certificate:

"State of Alabama, } I, William J. Simpson, Register
    Morgan County. } in Chancery for the 12th District,
Northern Chancery Division of said State, hereby certify

that the foregoing is a full and correct copy of the order of the judge of said court, transferring the matter of the final settlement of Benjamin F. Bean and Thomas D. Garner, administrators of the estate of Lawson Garner, deceased, to the Register of the Chancery Court for the 6th Chancery District of Northern Chancery Division of the State of Alabama. I further certify that H. A. Sharpe was the successor of the said C. C. NeSmith, as Register of the Chancery Court as aforesaid.

Given under my hand, at office, in Somerville, this the 16th day of May, 1877.          WILLIAM J. SIMPSON, Register."

To this evidence the defendants objected; the court sustained the objection, excluded the evidence, and the plaintiff excepted.

The plaintiff then offered said evidence, in connection with parol proof, that the said Benjamin F. Bean, who sues as administrator *de bonis non*, is the Benjamin F. Bean who is named as one of the administrators of the estate of Lawson Garner in the record from the Probate Court of Morgan county, and that the Judge of Probate of Morgan county, at the time of the transfer of the final settlement of plaintiff and Thomas D. Garner, as administrators, was their brother-in-law, and that he continued to be such Probate Judge up to and at the time said H. A. Sharpe issued letters to plaintiff. To the admission of this evidence, the defendant objected; the court sustained the objection, and plaintiff excepted.

The plaintiff demurred to the 7th, 8th and 9th pleas of defendant, on the ground that the facts set forth furnished no reason why the plaintiff should not recover the interest therein referred to. The court overruled the demurrer, and plaintiff excepted. The ruling on this demurrer appears in a separate entry from the judgment entered on the verdict of the jury, and the entry contains simply the action of the court on the demurrers. There was a verdict and judgment for the defendants, and the plaintiff brings the case here by appeal, assigning as error the various rulings to which exceptions were reserved.

L. P. WALKER, for appellant.—It is well settled that, where debtor and creditor reside in different countries which are at war with each other, that the creditor has not the right to demand or receive interest for the time the countries are at war; but it is equally well settled that if the creditor has an agent in the country with the debtor to whom money could be paid, the creditor can recover interest during the war. 7 Wall. 447; 1 Pet. 496; 3 Wash. C. C. 396; 4 Har. & McH. 116. When the debt falls due all become the principals.

[Bean, Adm'r, v. Chapman et al.]

There can be no doubt that the sureties were liable to pay the debt on the default of their principal, and Garner could have sued the appellees during the war and compelled payment, and they could have paid the bond without any violation of law. Whenever payment can be lawfully made, and the debtor fails or refuses to pay, the unvarying rule is that the debt carries interest.—*Paul v. Christie*, 4 Har. & McHenry, 116.

Section 2647 of the Code of 1876 provides that, when a Probate Judge is incompetent, under the provisions of § 540 of this Code, to discharge any duty in reference to an executorship, an administration or guardianship, the Register in Chancery of the district in which the county of such judge is situated, must discharge that duty as if he were Judge of Probate. The transcript from the register's office shows that the Probate Judge was related to the administrators. The authority of the Probate Judge to transfer the cause, and the jurisdiction of the register to act, depended on the fact of the relationship of the Probate Judge to the administrators. This was the jurisdictional fact, and this fact the record showed. In this case no inquiry can be made as to whether this recital in the record is true or not. If the record, in a transferred cause, recites the jurisdictional fact which authorized the transfer, the recital is conclusive in a collateral proceeding.— *Wilson v. Wilson*, 36 Ala. 655; *Hooks v. Barnett*, 38 Ala. 607. All reasonable intendments must be made in favor of the regularity of the decree or judgment.— *Wyman v. Campbell*, 6 Porter, 219; *DuVall v. McClosky*, 1 Ala. 708; *Wyett v. Rambeau*, 29 Ala. 510; *Key v. Vaughan & West*, 15 Ala. 495.

As to the grant of letters of administration, the Probate Court is a court of general jurisdiction.—32 Ala. 676; 34 Ala. 694; 32 Ala. 353. In the cases in which the register has jurisdiction under the statute, he sits as Probate Judge, and has the same jurisdiction *pro hoc vice*. Although Bean's letters, issued by the register, purport to be in chief, the record shows there had been a former administration, and when necessary to sustain the jurisdiction in a collateral attack, the court will treat a grant of special administration as an administration *de bonis non*, when that is the only grant that could be made.—*Moseley v. Mastin*, 37 Ala. 216; see, also, *Ikleheheimer v. Chapman*, 32 Ala. 676.

HUMES & GORDON, *contra*.—Interest on debts made previous to, and maturing during the war, ceased to run during the subsequent continuance of hostilities.—1 Amer. Lead. Cases, 528; *Brown v. Watts*, 15 Wall. 177; *Conn v. Penn*,

[Bean, Adm'r, v. Chapman et al ]

1 Pet. C. C. 496; *Lash v. Lambert*, 15 Minn. 416. The bond sued on states, in its body, that Cabaniss and Chapman are mere securities, and the rule is universal which limits the liability of the sureties to that of the principal.—See Tell's Law of Suretyship and Guaranty, 123–4; Burge on Suretyship, 4; Theobald on Prin. and Surety, 43, § 82. The principle that, whatever discharges the principal discharges the surety, is of extended application, and it operates whenever anything is done which relaxes the *exact legal contract* by which the principal is bound, or, in anywise lessens, impairs, and delays the remedies which the creditor may resort to for its assurance or enforcement.—2 Danl. on Neg. Inst. 290, § 1312; Thompson on Bills, 390; 1 Parsons on Notes and Bills, 244. Whenever the principal debtor was liable to pay interest, his surety is also liable; but while he is thus held liable for all losses arising from his principal's default, he cannot be held liable for anything beyond the actual extent of said loss.—*DeGolyar v. Guar. & Suretyship*, 235–6. The mere fact that the surety cannot, if he pays the note, have an enforceable claim for what he pays, against the principal, defeats the holders claim against the surety.—1 Parsons on Notes and Bills, 245; see, also, 21 How. U. S. 66; 9 Wheat. 680; 12 Wheat. 511; 15 Peters, 187; 2 Wall. 235; 7 Cranch, 69; 4 Wall. 186. These principles are sustained by decisions from the courts of last resort of nearly all the States.

The evidence offered by the plaintiff fails to show that there was any vacancy in the administration of the estate of Lawson Garner, and if there was no vacancy, the appointment of an administrator *de bonis non* is void.—36 Ala. 559; 27 Ala. 273; 18 Ala. 34; 40 Ala. 155; *McDowell v. Jones*, 58 Ala. 156. And a judgment in favor of an administrator *de bonis non* will be annulled.—45 Ala. 613. It was necessary for the plaintiff to show, by record, evidence that there had been a transfer and a resignation of the administrators in chief, before any one could make an order appointing an administrator *de bonis non*. The oral proof offered was clearly inadmissible; it was both irrelevant and secondary. The plaintiff was bound to prove that he was administrator *de bonis non*, and he had the laboring oar; this court, rather than indulge the presumption of a vacancy in favor of appellants, will indulge the presumption of affirmative proof having been made below of no vacancy, the record not setting out all the evidence, and that presumption being in favor of the appellees.

STONE, J.—As we read this record, the ruling of the Circuit Court on the demurrers, is shown in the judgment entry.

Not in the final judgment, it is true ; but the ruling was entered on the minutes, in a separate, independent entry. It is found on the 19th page of the transcript, and is in all respects formal, except that it contains only the judgment on the demurrer. Courts frequently pronounce judgment on demurrers before the cause is taken up for final trial. Sometimes this is done at a different term of the court. There is no irregularity in this. Our ruling is, that judgments on demurrer, to receive consideration of this court, must appear of record ; must be entered on the minutes. The present record comes up to the rule, and its effect is not impaired by the unnecessary exception reserved to the ruling of the court thereon.

Under the facts of this case, the flagrancy of the recent war between the sections did not stop the running of interest. The plaintiff and defendants in this suit, at no time sustained the relation of alien enemies to each other. During the entire prevalence of that fierce conflict, they inhabited co-terminous counties in this State. The plaintiff could at any time have received payment from the defendants, and the defendants could at any time have paid the plaintiff, without violating any rule of law. The whole theory on which interest and the statute of limitations stand still during hostilities, rests on the stern non-intercourse which public law requires of nations or peoples at war with each other. It is a public quarrel, in which every individual on the one side, whether combatant or non-combatant, is conclusively classed as the enemy of every individual on the other side. These shall have no commercial intercourse with each other. Bean and his intestate, Garner, were never alien enemies to Chapman or Cabaniss. At any time suit could have been prosecuted on this cause of action between these parties, and the money due, with interest, might have been coerced out of these defendants, even before the close of the war. The case of *Paul v. Christie,* 4 Har. & McH. 161, is not distinguishable from this. It was there held that the plaintiff was entitled to full interest, notwithstanding the war. We think that decision rests on impregnable grounds. We do not, in this, gainsay the doctrine, that "as soon as a war is commenced, all trading, negotiation, communication or intercourse between the citizens of this country and the enemy, without the permission of government, is unlawful."—*Griswald v. Waddington,* 16 Johns. 438 ; *Brown v. Hiatts,* 15 Wall. 177 ; *Semmes v. Hartford Ins. Co.,* 13 Wall. 160 ; *Conn v. Penn,* Pet. Cir. Ct. Rep. 496 ; *Denniston v. Imbrie,* 3 Wash. Cir. Ct. 396 ; 1 Am. Lead Ca. 528. See, also, *Lash v. Lam-*

[Bean, Adm'r, v. Chapman et al.]

*beri*, 15 Minn. 416. What we decide is that this case does not fall within the rule.

It is contended for appellees that, being only sureties, their liability is accessorial, and that they can not be held for a greater sum than their principal, Lakin, is liable to pay. The foregoing is certainly the rule in a proper case. Whenever the inquiry is one of original liability, the surety can not be held to a greater extent than the principal is bound for. The principal's obligation defines the boundary upward, beyond which the surety's obligation can not be carried. So, the creditor can do no act by which he reduces the principal's liability, without, at the same time, reducing the surety's liability, at least, to the same extent. But the rule is very different where the law reduces or absolves the principal's liability, without the fault or procurement of the creditor. In such case the principal's defense is personal, and does not affect or impair the surety's liability, unless he also have a personal defense. Discharge of the principal in bankruptcy, statute of limitations, or, if he be dead, failure to present or file the claim against his estate within the time required by law, are of this class.—*Minter v. Br. Bank*, 23 Ala. 762 ; *Hooks v. Br. Bank*, 8 Ala. 580 ; *Cawthorne v. Weisinger*, 6 Ala. 714 ; *Woodward v. Cligge*, 8 Ala. 317. In such cases the surety can pay the debt at any time after it matures, and then proceed against the principal for money paid for his use, and at his request. Whether if the present defendants pay this debt, they can not recover of Lakin, their principal, the whole sum they have to pay, including interest, is a question we need not here discuss. The Circuit Court erred in overruling plaintiff's demurrer to the 7th, 8th and 9th pleas of defendants.

Our statutes have made provision for the transaction of probate business, when the Judge of Probate is incompetent to sit by reason of interest, relationship, &c., under section 540 of the Code of 1876 Section 2648 declares that "when a Probate Judge is incompetent under the provisions of section 540 of this Code, to discharge any duty in reference to an executorship, an administration, or guardianship, the Register in Chancery of the district in which the county of such Judge is situated must discharge that duty, as if he were Judge of Probate.—§ 2648. Such Register must discharge such duty in the Probate Court without the removal of the original papers or records from such Probate Court ; and all orders, decrees and judgments therein made by such Register, may be appealed from, revised and enforced, as if they were the orders, decrees or judgment of such court."

In *Wilson v. Wilson*, 36 Ala. 655, rules are laid down which, we think, settle the most material questions arising on this branch of this case. The Judge of Probate of Morgan county, the county in which Bean's administration of Garner's estate is alleged to have been had, certified that he was brother-in-law both to Bean and to Garner, his co-administrator; and he made an order, transferring the account and settlement to the Register in Chancery of that county. This, if properly shown to the Circuit Court, divested the jurisdiction of the Judge of Probate, and clothed the Register in Chancery of that county with all probate jurisdiction of that administration, so long as the disability of the Probate Judge continued. We judicially know who are and have been Probate Judges at any given time, and we know that the same person was Probate Judge when the order of transfer was made June 6th, 1870, and when the Register issued the letter of administration to Bean, August 2d, 1871. Hence, the order of transfer of the Judge of Probate, if properly shown, proves that the Register in Chancery of Morgan county was the proper officer to appoint Bean, the brother-in-law of the Judge of Probate, to the administration of Garner's estate. No new certificate of disqualification was necessary.

But the Register should have discharged that duty "in the Probate Court," and the record of the appointment should have been made in that court. It did not pertain to the Chancery Court. Under the statute, the case is not transferred to the Chancery Court, nor to the Register of that court, as Register. The Register becomes Judge of Probate *pro hac vice*. His action becomes the act and record of the Probate Court, and the record is required to remain in the Probate Court. When necessary to have a transcript of the record, it is certified from the Probate Court, not the Chancery Court. The Register's certificate of such order, made as Register in Chancery, gives it no authority whatever; for, as to this service, thus pronounced, he is a private person. The Judge of Probate was the proper officer to certify the transcript in this case; and, on this ground, without considering any other, the Circuit Court did not err in rejecting the transcript. There is perhaps another ground which required its rejection. It assumed to certify what did not appear of record, namely, that H. A. Sharpe was the successor of C. C. NeSmith. The order of transfer was not so certified as to make it legal evidence.

If the order of transfer had been legally shown, then, as we have stated above, the jurisdiction of the Register to discharge this particular "duty in the Probate Court," would be made out. The matter of performing the duty "in the Pro-

[Bean, Adm'r, v. Chapman et al.]

bate Court, without the removal of the original papers or records from such Probate Court," would be a question of regularity at most, which would not avoid the proceedings, presented collaterally, as the question comes before us in this case. It thus became a question in the court below, of proving the order of transfer by legal evidence. We have shown above that the offer made in this case did not come up to the rule, and the Circuit Court did not err in its rejection.

It is contended that the appointment of Bean was void, because the record shows the prior appointment of Bean and Garner as administrators in chief, and does not show their authority had ceased. The record of the administration in chief is not pretended to be set out in this transcript. All that is attempted to be shown is, the appointment of Bean and Garner to the administration in chief, the order of the Probate Court, reciting that they had filed an account and vouchers for final settlement, that the Judge of Probate was "incapacitated to act in the matter of said settlement on account of being a brother-in-law to said administrators," and transferring said account and settlement to the Register in Chancery; and the letter of administration to Bean, issued about a year afterwards, by the Register in Chancery. The filing of the account current for final settlement indicates that Bean and Garner, as administrators, proposed to make final settlement, and to be relieved of the trust. Bean was appointed to the same trust more than a year afterwards. Presented collaterally as this question is, and in the absence of all information other than that referred to above, we hold that, if the order of transfer were legally shown, it would be our duty to presume the authority of the administrators in chief had terminated legally, before the Register committed the administration to Bean.—*Spright v. Knight,* 11 Ala. 461; *Ragland v. King,* 37 Ala. 80; *Coyburn v. McQueen,* 46 Ala. 551; Code of 1876, § 2376.

Reversed and remanded.

BRICKELL, C. J., not sitting.