# Metcalf *v.* Lowther's Executrix.

*Bill in Equity for Settlement of Accounts of Deceased Guardian.*

1. *Domicile of infant.*—As a general rule, the domicile of an infant, during his minority, is that of his father; and he cannot change it by any act of his own, though it may be changed by his father.

2. *Personal property; where situated, and by what law distributed.*—For general purposes, personal property has no *situs*, but follows the residence of the owner, and is distributed, in case of his death, according to the law of his domicile.

3. *Domiciliary and ancillary guardianship.*—Letters of guardianship, granted in Georgia, on the estate of an infant who resides with her father in Alabama, where he has his domicile, though prior in point of time, are ancillary only to a subsequent grant of letters in Alabama to the father; and if the Georgia guardian collects a pecuniary legacy, there bequeathed to the infant, a payment by him to the father will discharge him from liability to account in the courts of Alabama, although it was not made according to the laws of Georgia regulating the removal of the estates of infants, and might not be sufficient to discharge him from judicial proceedings there instituted.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The original bill in this case was filed on the 5th March,

[Metcalf v. Lowther's Executrix.]

1872, by Mrs. Anna P. Metcalf, the wife of H. B. Metcalf, who sued by her next friend, against Mrs. Caroline A. Lomax, as the executrix of the last will and testament of Mrs. Elizabeth Lowther, deceased; and sought an account and settlement of Mrs. Lowther's guardianship of the complainant, under letters granted in Georgia, as hereinafter more particularly stated. In September, 1862, Mrs. Nancy Parish, who resided in Jones county, Georgia, there died, and bequeathed a pecuniary legacy of $10,000 to the complainant, who was an infant under fourteen years of age, and resided with her father, William J. Howard, at his home in Macon county, Alabama. The will of Mrs. Parish was duly proved, and admitted to record in the proper court, in said county of Jones; and on the 1st December, 1862, letters of guardianship on the estate of the complainant were there granted to Mrs. Lowther, on her own petition, which stated that the infant's estate consisted of said legacy. The property belonging to the estate of Mrs. Parish having been sold, and converted into Confederate currency, the executor there paid to Mrs. Lowther, as guardian, on the 4th December, 1862, the sum of $8,707.13, and on the 10th March, 1863, the further sum of $434.09. These payments were made in Confederate currency, and together constituted the entire amount received on account of the legacy, which was abated, ratably with the other pecuniary legacies, on account of a deficiency of assets. On the day these payments were made respectively, Mrs. Lowther loaned the money to said William J. Howard, the complainant's father, taking his notes, with his wife as surety, for the repayment of it, with interest, at a future day. These notes are nowhere set out in the record, and the time when they became due is nowhere stated; but their respective amounts were $9,362.90 and $458.55, and they were payable to Mrs. Lowther as guardian. On the 26th December, 1864, Mrs. Lowther filed her petition in the Court of Ordinary in Georgia, by which her letters of guardianship were granted, stating that she desired to pay over her ward's property to the guardian in Alabama, and praying that, upon her doing so, and filing his receipt, she might be discharged. On the 1st January, 1865, she also filed her accounts for a final settlement, which were audited by the judge of said court, showing a balance due her ward, in Confederate currency, of $9,717.48; and the judge thereupon made an entry of record, in these words: "This calculation made by me, as the law directs in such cases, for settlement of said guardianship with the new guardian appointed in Alabama, the residence of said ward, to which State the guardianship is to be removed; the guardian being present at the same, and no

other person required to be notified." On the 23d May, 1865, this account was "examined and recorded" by the judge of said Court of Ordinary; and no other proceedings were ever had in said court, in the matter of said guardianship.

On the 6th March, 1865, William J. Howard, the complainant's father, made application to the Probate Court of Macon county, Alabama, where he still resided, to be appointed guardian of the person and estate of the complainant; and she being over fourteen years of age, and appearing in court with him, and consenting to the appointment, letters of guardianship were granted to him, and he gave bond as such guardian. On the 22d December, 1866, the said W. J. Howard received from the judge of said Court of Ordinary in Georgia, in whose office they had been deposited by Mrs. Lowther, his two notes above mentioned, given for the money borrowed from Mrs. Lowther, and gave his receipt for them to the judge; but he had never paid any part of the money. On the 18th February, 1867, said Howard filed his accounts and vouchers for an annual settlement of his guardianship; charging himself with $9,362.50, as received from Mrs. Lowther, former guardian, on the 4th December, 1862, in Confederate currency, and the further sum of $485, received from her, in the same currency, on the 10th March, 1863; and crediting himself with court costs, &c., and $6,565.37, on account of the depreciation in the value of the Confederate money when he received it. On this settlement, which was regularly continued until the 14th October, 1867, the complainant was represented by a guardian *ad litem*, and the court allowed the account as stated, showing a balance of $3,232.88 in the hands of the guardian. On the 17th May, 1870, the complainant having previously married H. B. Metcalf, said W. J. Howard paid $1,100 to said Metcalf, who gave his receipt, in the following words: "Received of W. J. Howard, guardian of Anna P. Howard, eleven hundred dollars, to be credited on the amount of the legacy ascertained to be due Anna P. Howard, by the Probate Court of Macon county, out of the Confederate money received by said Howard from Elizabeth Lowther, former guardian." On the 28th July, 1871, said Howard filed his accounts and vouchers for a final settlement of his guardianship; charging himself with the balance against him on the former settlement, with interest, and crediting himself with the $1,100 paid to H. B. Metcalf, and with the further sum of $3,219.45, as "balance due on note of Anna F. Howard," his wife, payable to himself as guardian, "and turned over to said Metcalf and wife." The 9th October, 1871, was appointed for the

settlement, and a final decree was rendered by the court on that day in accordance with the account as stated, showing a balance of $252.40 in favor of the guardian; the decree reciting that notice of the settlement had been given by publication, and that no one appeared to contest the account.

The original bill alleged the facts above stated, as to the legacy bequeathed to the complainant by Mrs. Parish, the probate of her will, the appointment of Mrs. Lowther as guardian in Georgia, her receipt of the legacy, her death in Montgomery, Alabama, where she resided, in April, 1871, not having settled her guardianship, the execution and probate of her will, and the grant of letters testamentary to the defendant. The defendant, in her answer, set up the judicial proceedings had in the courts of Georgia and Alabama, as above stated, and pleaded them in bar of the relief sought by the bill. She averred, also, that Mrs. Lowther, who was the mother-in-law of said W. J. Howard, applied for said letters of guardianship in Georgia at his instance and request, solely for the purpose of receiving said legacy, and transferring it to him, on his appointment as guardian by the proper court in Alabama; that she paid him the money in anticipation of his appointment, on his promise to apply for letters; that he was present when her settlement was made with the court in Georgia; that said settlement was full and complete, though no formal discharge was entered of record, and it was only necessary to produce and file the receipt of said Howard as guardian; that said Howard, after his appointment as guardian, received his notes from the judge of the court (which were the evidences of the debts belonging to the estate, and its only assets), and filed his receipt for the same; that he charged himself with these assets, and fully accounted for the same on his settlement with the Probate Court of Macon; that the complainant and her husband were both over twenty-one years of age when this settlement was made, and had legal notice of it; that the payment to the complainant's husband was made with her knowledge and consent, and was acquiesced in and ratified by her; and that Mrs. Howard's note for the balance due, her estate being solvent, was delivered by said W. J. Howard to the complainant, or to her husband for her, and was received by them in satisfaction of the balance due from said Howard as guardian.

The complainant afterwards filed an amended bill, alleging that said W. J. Howard was insolvent when Mrs. Lowther lent him the money received on account of the complainant's legacy, and his wife had no property which could be made liable for the debt; that this disposition of the money was a

conversion, for which the estate of Mrs. Lowther was liable; that the complainant and her husband had no notice of the settlement of said Howard's accounts as guardian; that the $1,100 paid to the complainant's husband was all she had ever received on account of her legacy; that in October, 1870, a few days after the death of Mrs. Howard, said W. J. Howard handed a package of papers to the complainant, which he „said were of importance, and desired her to keep them safely; that the note of Mrs. Howard was among these papers, but complainant did not know the fact when she received them from her father; that neither she nor her husband had ever accepted this note in satisfaction of the debt due from said Howard as guardian, and had never asserted any ownership over it, nor presented it as a claim against Mrs. Howard's estate.

The depositions of the complainant and her husband were taken for the complainant. They testified to the facts stated in the amended bill, as to the delivery of the note and packagĕ of papers, and the want of notice of Howard's settlement. It was admitted, by agreement of counsel, that Confederate money was worth twenty-five cents on the dollar, as compared with gold, when the money was received by Mrs. Lowther and loaned to Howard. The statute laws of Georgia relating to the removal of the property of infants to another State, as found in Hotchkiss' Statute Laws, pp. 336-7, §§ 51-60, were read in evidence by the defendant; and transcripts of the judicial proceedings in Georgia and Alabama, as above stated, were offered in evidence by both parties.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

ELMORE & GUNTER, for appellant.—1. Mrs. Lowther received her appointment as guardian in Georgia, and there collected the assets of her ward's estate; and her liability is to be determined by the laws of Georgia. She has not been discharged by the laws of Georgia, and the ward has not received the estate which was committed to her charge. If, in the absence of any statute in Georgia, regulating the transfer of her ward's estate to a guardian in Alabama, she had paid over the assets to Howard, the payment would have been wrongful, and at her own risk. Howard would have been her agent, and she would have been responsible for his failure to pay the money to her ward. But there was a statute in Georgia, prescribing the mode in which she might transfer her ward's estate to Alabama, and thereby discharge herself. This mode she did not adopt: her settlement with

Howard was contrary to the laws of Georgia, and did not discharge her.

2. The settlements made by Howard cannot have the effect of discharging Mrs. Lowther. There is no controversy as to the $1,100 paid to the complainant's husband, which was accepted as a partial payment of the legacy. But the balance remains unaccounted for, and the principal matter in issue is whether this was paid by Mrs. Howard's note. The circumstances under which this note was delivered to the complainant are proved by the depositions of herself and her husband, and all the facts disprove the idea of payment or satisfaction. The recitals in the settlement, as to this note, are not conclusive on the complainant, since neither she nor her husband had any notice of that settlement. She is not estopped by that settlement, as in favor of Mrs. Lowther, who was not a party to it, and, therefore, is not estopped by it; for estoppels must be mutual.—*Bentley v. Cleaveland*, 22 Ala. 814; *Gwynn v. Hamilton*, 29 Ala. 233; *Bloodgood v. Grasey*, 31 Ala. 575; *Thomason v. Odum*, 31 Ala. 108; *Ross v. Pearson*, 21 Ala. 473; *Crutchfield v. Hudson*, 23 Ala. 393. Nor can any estoppel be invoked against the complainant by mattes *en pais*: there has been no act on her part, no admission, or declaration, by which she has gained an advantage, or by which the defendant has been injured.—*McCravey v. Remson*, 19 Ala. 438. *Stone v. Britton*, 22 Ala. 543; *Pounds v. Richards*, 21 Ala. 424; *Hunley v. Hunley*, 15 Ala. 91; *Eastern Bank v. Taylor*, 41 Ala. 93; *Ware v. Cowles*, 24 Ala. 446; *Shelton v. Carroll*, 16 Ala. 148. The doctrine of estoppel does not apply to married women, in regard to their statutory separate estates.—*Smyth v. Oliver*, 31 Ala. 39; *Canty v. Sanderford*, 37 Ala. 91; *Alexander v. Saulsbury*, 37 Ala. 375.

WATTS & SONS, and J. T. HOLTZCLAW, *contra*.—1. Howard, the guardian in Alabama, had the right to settle with the former guardian, and receive his own note in payment.—*Norton v. Wise*, 48 Ala. 214. The complainant's marriage terminated Howard's guardianship, and authorized the settlement with her husband.—*Mobley v. Leophart*, 47 Ala. 257; *Bibb v. Vaughn*, 46 Ala. 183; 46 Ala. 584.

2. Howard's settlement with the Probate Court of Macon county was full, complete, and final; and it is a bar to any proceeding against Mrs. Lowther's estate.—*Frierson v. Travis*, 39 Ala. 150; *Bruce's Ex. v. Strickland*, 47 Ala. 192. The statute does not require personal notice.—See cases last cited.

3. The payment by Howard to the complainant's hus-

[Metcalf v. Lowther's Executrix.]

band, in her presence, in May, 1870, was a ratification of the settlement made by Howard; and it could not be ratified in part, and disaffirmed in part.

4. When Howard, being the debtor of his daughter's estate, became himself her guardian, the law presumes that he paid himself. The debt was then extinguished, and the former guardian discharged.

STONE, J.—In Wharton Conflict of Laws, § 259, it is said: "The state wherein a ward is domiciled is that which, both in interest and in conscience, is charged with his protection; and it is that, therefore, which, on general principles, should nominate and direct the guardian of such ward. Hence, by the uniform practice of European continental states, the guardian appointed by such home authority has control of his ward's estate abroad, as well as at home. * * This, however, does not prevent the appointment of special, subordinate guardians, to take charge of the ward's estate in remote territories."

The same author, in section 260, quotes approvingly from Sir R. Phillimore, as follows: "Whatever may be the differences in the positive laws of different states, with respect to the mode of constituting a guardian, the rule of international comity imperatively demands, that a guardian, duly constituted according to the laws of the domicile of the ward, should be recognized as such by all other countries."—See an able discussion of this question, *Nugent v. Vetzen*, 2 Eq. Cases, Law Rep. 704.

The domicile of the father, as a general rule, is the domicile of an infant child. "*Prima facie*, the infant's residence or domicile is that of his parent; and such it will remain during minority, in spite of his temporary absence at school, or elsewhere. Nor can he, of his own motion, acquire a new domicile, since he is not a person *sui juris*. But his domicile may be changed by his father, if he has one."—Schouler's Dom. Rel. 412, 312.

Ch. J. Gibson, in *School Directors v. James*, 2 Watts & Serg. 570, says: "The domicile of an infant is the domicile of his father, during the father's life-time." The same doctrine is asserted by this court, in the case of *Johnson v. Copeland*, 35 Ala. 521.

For general purposes, personal property is not localized— has no independent *situs*. It follows the residence of the owner; and, in case of his death, it is distributed according to the law of his domicile.—See *Parsons v. Lyman*, 20 N. Y. 112; *Johnson v. Copeland*, 35 Ala. 521; Story Confl. of Laws, § 362; *Wilkins v. Ellet*, 9 Wall. 740.

In the kindred trust of executor or administrator, certain canons are settled and admitted in all courts. Among these are, that the *situs*, or residence of chattels or moveables, is that of the owner; that the power and authority of the personal representative of the decedent have no extra-territorial operation, but are limited to the State or country from which such representative receives his appointment; that the representative appointed in the jurisdiction within which decedent had his last residence, is the primary, or chief administration; that other jurisdictions, in which decedent has goods or effects, may appoint administration of the same, but such administration, so appointed, save for certain purposes of local policy claimed and exercised by all nations, is subordinate and ancillary to the administration of the last residence.—See *Wilkins v. Ellet, supra*; *Dawes v. Boyleston,* 9 Mass. 337; *Jemison v. Haygood,* 10 Pick. 77; *Parsons v. Lyman, supra.*

There is an eminent propriety in having the personal effects of a ward in the same jurisdiction in which such ward has his or her residence. It will, as a general rule, be better cared for and administered at that place. The near relatives of the ward, with whom such ward is most likely to reside, will be more watchful than strangers would be, of the financial condition of the sureties on the guardian's bond. Many other reasons, without being here enumerated, will suggest themselves, why the personal property of the ward should be under the control of the guardian, who has the custody of the ward.

The case of *Dorman v. Ogbourne,* 16 Ala. 759, is persuasive to show, that the same rule and policy which obtain in primary and ancillary administrations, prevail between guardianship of the domicile and foreign guardianship.

The complainant, Anna P. Metcalf, *nee* Howard, so far as the record informs us, was always a resident of Alabama. At the time when complainant's right to the fund in controversy accrued, and ever afterwards, she resided with her father, in Alabama. When he took out letters of guardianship in this State, he became domiciliary guardian of both her person and estate; of the latter, within the territorial jurisdiction of Alabama. Mrs. Lowther's guardianship in the State of Georgia was, in its nature, ancillary. Its purpose and office were to receive the pecuniary legacy of ten thousand dollars, to which complainant was entitled under the will of Mrs. Parish. Under the laws of Georgia, it was thought necessary to have such local guardian, to receive the legacy from Mrs. Parish's executor, and give him a proper receipt and acquittance. This, however, did not have the ef-

fect of making Mrs. Lowther's the primary, or controlling guardianship, although first in time. It still possessed only the properties of an ancillary guardianship; auxiliary to the guardianship of the domicile. When she paid over the assets to Mr. Howard, the father of complainant, having the right to her care and custody, and domiciliary guardian by rightful appointment, she only placed the fund where it rightfully belonged.—See *Skinner v. Frierson*, 8 Ala. 915; *Willis v Willis*, 16 Ala. 659; *Bogle v. Bogle*, 23 Ala. 544. The courts of Alabama, in view of its own policy, cannot hold such payment wrongful.

In *Wilkins v. Ellet*, 9 Wall. 740, the domiciliary administration was in Alabama, where the intestate had his residence at the time of his death. A debtor of the estate, residing in Tennessee, had there made payment of the debt to the administrator in chief, taking his receipt against the claim. Subsequently, an administrator of the estate was appointed in Tennessee, who brought suit against the debtor, to recover the said debt. The payment to the Alabama administrator was relied on in defense. The court held the payment good, remarking, "It has long been settled, and is a principle of universal jurisprudence, in all civilized nations, that the personal estate of the deceased is to be regarded, for the purposes of succession and distribution, wherever situated, as having no other locality than that of his domicile; and if he dies intestate, the succession is governed by the law of the place where he was domiciled at the time of his decease."   *   *   *   The original administration, therefore, with letters taken out at the place of the domicile, is invested with the title to all the personal property of the deceased, for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue, according to the law of the place, or directions of the will, as the case may be."

It does not follow from this, that the courts of Georgia, in the condition in which the record shows the guardianship of Mrs. Lowther to have been, would have made any order, compelling her to pay over the fund to the home guardian. They probably would not. In a case like this, *Lary v. Craig*, 30 Ala. 631, this court refused to make an order, requiring a resident guardian to pay over personal assets to a guardian of foreign appointment. It becomes a very different question, however, when the attempt is made, in the courts of Alabama, to hold an ancillary guardian of foreign appointment to account a second time for the money assets of the ward, which such guardian had previously paid to the domiciliary guardian, who, all the while, has resided with

his ward in the State of Alabama. The money having reached its proper destination, we hold it is rightfully there.

The decree of the Chancery Court is affirmed.

