# Watson *v.* Williamson *et al.*

## Statutory Action of Ejectment.

1. *Will; construction thereof.*—Where a testator devises his lands to his wife for life and further directs in his will that upon his wife's death his property shall be qually divided "among my lawfully begotten heirs, and each share of said lands to be held and controlled by the heir drawing the same, for the use of him or herself and his or her lawfully begotten heirs during his or her natural life, and each said share in case of decease of either of my said heirs shall descend to his or her lawful heirs, to be by them disposed of as they may severally determine," and it is further shown from the entire context of the will that the words "heirs" and "lawfully begotten heirs" are not used in their technical

[Watson v. Williamson *et al.*]

sense, but in the sense of children, and under such will the children of the testator, upon the death of the latter's wife, take a life estate in the lands of the testator, and at their death, their children (the grandchildren of the testator) acquire a fee simple title to the land.

' APPEAL from the City Court of Talladega.
Tried before the Hon. G. K. MILLER.

This was a statutory action of ejectment, brought by the appellees against the appellant, D. W. Watson, to recover a certain tract of land specifically described in the complaint. The suit was instituted on August 8, 1889. The defendant pleaded the general issue and the statute of limitations of ten years, and also suggested by special plea adverse possession for three years.

The plaintiffs were the children and grandchildren of James D. Truss, who was a son of Enos Truss, deceased. Enos Truss died on May 15, 1875, leaving a last will and testament. This will was duly admitted to probate on petition by James D. Truss, who was named as executor on July 12, 1875. This will as probated was introduced in evidence. The portions of the will relating to the devise of the land and having reference to the present suit were in words and figures as follows: "My lands of whatever description and wheresoever situated, together with all the rents, profits and proceeds thereof I give to her, my said wife, during her natural life, and at the death of my said wife, Tabitha Truss, it is my will and desire that three disinterested and discreet commissioners be appointed by the judge of probate to divide said land into five equal shares as nearly as practicable to be drawn for by lot for division among my lawfully begotten heirs, and each share of said lands to be held and controlled by the heir drawing the same, for the use of him or herself, and his or her lawfully begotten heirs during his or her natural life, and each said share in case of decease of either of my said heirs shall descend to his or her lawful heirs to be by them disposed of as they may severally determine. Except, that it is my will and desire that if my daughter, Elizabeth Clay, wife of John Clay, should die before the death of Alexander W. Bell, husband of her daughter, Nancy E. Bell, all of her share shall de-

scend and go to her daughter, Marina T. Coleman, and other lawful heirs of her body. But in the event the said A. W. Bell should die before the death of my daughter, Elizabeth Clay, then her daughter, Nancy E. Bell, shall take an equal share with other lawful heirs," etc. "It is further my will and desire that in case any portion of my said estate should be taken in payment of liabilities for which I am responsible of any of my said heirs, that so much as may be applied thereunto shall be deducted from the share of said heir or heirs."

The cause was submitted upon an agreed statement of facts, which was as follows: "It is further agreed that James D. Truss died on the 27th day of January, 1899, and Mrs. Tabitha Truss, wife of Enos Truss, died before 20 of March, 1886. It is further agreed that D. W. Watson acquired title in the following manner: That James D. Truss, the father of the plaintiffs, on the 20th day of March, 1886, transferred and conveyed to Miss Marina T. Coleman all the right, title and interest in the property which he acquired by the will of his father, Enos Truss, in the manner as set forth in the agreement executed on the 20th day of March, 1886, which agreement was witnessed by A. W. Bell and G. A. Ash. The execution of such instrument is admitted. A bill was filed by Arthur T. Wood, administrator *de bonis non* with will annexed of the estate of Enos Truss against John T. Truss and others on the 10th day of June, 1887, praying the chancery court to assume jurisdiction for an administration of the estate and payment of the debts and division of the property among the heirs; that a decree of partition was rendered on the 14th of March, 1888, ordering the register to divide the lands as provided in the will on the 30th day of May, 1888; this division was made and Miss Marina T. Coleman in such division acquired the lands sued for as the assignee and transferee of James D. Truss, and that a decree confirming said partition on Septembr 14th, 1888, was entered in said cause; that immediately after this land sued for was set apart and drawn as shown by the proceedings in said chancery court above rferred to, Marina T. Coleman went into possession under such decree and partition and that

her heirs, Mrs. Bell and the children of Mrs. Bell, from whom the defendant acquired title, and the defendants have been in actual possession under such decree claiming to own the same in fee continuously to this time under such partition and decree and was in possession at the time this suit was brought.

"It is further agreed that Merina T. Coleman died and willed the property described in this suit to Katie Bell, Minna Bell, Charlie B. Bell, French Bell, Fred Bell, W. T. Bell, Jr., and Chester Bell, jointly, and that her title passed by such will to the parties above named, and that a petition for the sale of these lands was filed by Minna Bell against the other joint owners on November 18, 1896, and that the same was sold for division and bought by the defendant, D. W. Watson, on the 25th day of January, 1897, for $704 cash, said sale purporting to sell a fee simple title and that D. W. Watson bought under decree and paid in cash the above sum which was the reasonable market value for the fee simple title to said property sold, being at the rate of $10 per acre, and that the purchase money was paid by the defendant in full and a deed was made to him by the commissioner appointed by the probate court and it is agreed that the proceedings in the probate court for the sale for division were regular and that the defendant by such proceedings acquired the title that the above named joint owners owned and held and had acquired from Marina T. Coleman. It is further agreed that upon the making of said deed, on to-wit, the 25th day of January, 1897, this defendant went into possession and has held actual possession under such deed since that time claiming to own the fee and has made permanent improvements thereon and the value of such permanent improvements is the sum of, to-wit, $100. It is further agreed that the annual rental value of said premises is $25." It was also agreed that either party could introduce in addition to the facts agreed on, the decree and orders of the register in the chancery suit, as well as the original bill and all other documentary evidence relating to the case.

The bill, which was filed in the chancery court by Arthur T. Wood, and which was introduced in evidence asked to have the administration of the estate of Enos

Truss, deceased, removed into the chancery court for the construction of the will, and for the reimbursement of money paid out of the estate of Enos Truss on account of judgment against two of his children, John T. Truss and Henry W. Truss, which judgments were rendered upon suits brought on bonds given by said John T. Truss and Henry W. Truss as principals, respectively, with Enos Truss as surety on each of said bonds.

It was stated in the bill that J. D. Truss was indebted to Marina T. Coleman, as guardian and upon his guardian's bond Enos Truss, was a surety, but that upon the payment of such indebtedness he had transferred to Marina T. Coleman all of the interest which he had in and to the estate of Enos Truss, deceased. Marina T. Coleman was the daughter of Elizabeth Clay, one of the children of Enos Truss, and was made a party defendant to the bill removing said estate into chancery.

None of the plaintiffs in the present suit, who were remaindermen in the will, were made parties to the said bill or were in any way brought into that suit.

Upon a reference to the register to ascertain what part of testator's estate had been taken in payment of his heirs' debts, and for what amount his estate was so liable, the register reported, among other things, that Marina T. Coleman recovered a judgment against J. D. Truss, Sr., as her guardian, in a certain sum in the year 18.., that Enos Truss was surety on said guardian's bond and that J. D. Truss, Sr., had conveyed his interest to her in payment of such judgment as far as it would go.

The lands of the testator which had not been sold by order of the probate court were, by order of the chancery court, devised as provided for in the will and drawn for by all the heirs, (children of Enos Truss), except that Marina T. Coleman drew for the share of J. D. Truss, Sr. The chancellor, in rendering his decree. said: "It seemed" to him "that the title of the heirs of Enos Truss in his property vested in them at his death," and confirmed the report of the register, the drawing of the shares, but expressly refused to charge the share of J. D. Truss, Sr., because it was not asked by the bill, nor in any other way.

[Watson v. Williamson *et al.*]

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence, the court rendered judgment for the plaintiffs. From this judgment the defendant appeals, and assigns the rendition thereof as error.

KNOX, BOWIE & DIXON, for appellant.—The common law interpretation of the words. "heirs," "lawful heirs" and "lawfully begotten heirs" was that it created a fee tail and, therefore, under our statute, abolishing fee tails that the first taker acquires a fee simple title.—*Sullivan v. McLaughlin*, 99 Ala. 600; *Lenoir v. Rainey*, 15 Ala. 467; *Slayton v. Blount*, 93 Ala. 575; *Smith v. Greer*, 88 Ala. 414; *Martin v. McCray*, 30 Ala. 116; *Bibb v. Bibb*, 79 Ala. 437; Code of 1896, § 4245; 3 Jarman on Wills, 90.

CECIL BROWNE, *contra.*—There can be no doubt that this will created a life estate in the widow, and, at her death, a life estate in the five children of testator, each in the share drawn by him, with remainder in each such share to the heirs of such last named life tenant. And that such was the intention of the testator is conclusively shown by the disposition of the share of his daughter, Elizabeth Clay, at her death, in certain events. It is evident that the provisions of the will do not constitute a fee tail, and would not at common law, and, therefore, does not come within the provisions of sections 1021 of the Code, which converts fees tail into fees simple.—2 Jarman on Wills, 585-89; Code of 1896, § 1025; *Mason v. Pate*, 34 Ala. 390.

A life tenant can by no act of his defeat a remainderman; and this doctrine applies to contingent remainders.—Code, § 1026; *Thrasher v. Ingram*, 32 Ala. 646; *Pendley v. Maddison*, 83 Ala. 484; *Smith v. Cooper*, 59 Ala. 494; *Gindrat v. West R. Co.*, 96 Ala. 162; *McLeod v. Bishop*, 110 Ala. 646.

TYSON, J.—Both plaintiffs and defendant claim title to the land in controversy from a common source; the former as devisees under the will of Enos Truss, and the latter as purchaser through mesne conveyances from

[Watson v. Williamson *et al.*]

James D. Truss, who was also a devisee under said will. The state of the title is dependent entirely upon the construction of the will of Enos Truss, which was executed and probated in 1875. It is clear that the devise to his lawfully begotten heirs, of whom James D. Truss was one, was intended to be a devise to his children; that from the entire context of the instrument the words "lawfully begotten heirs" were not used in their technical sense, but were used in the sense of children, and those words should be so read. This is manifest when we construe them in connection with that portion of the will making provision for the disposition of the share of his daughter, Elizabeth Clay, and also with that provision which required, that in case any portion of his estate should be taken to discharge any obligations for which the testator was liable on account of his children, that such amount so paid should be deducted from the share of such child. It is true, the word heirs is here used instead of children, but when it is made known that he was surety for three of his sons upon different obligations at the date of the making of the will, it is perfectly clear, that his meaning is just as we have expressed it in our reference to that provision. For should the word "heirs" be held to have been used in its technical sense, this clause of the will would be meaningless. "*Nemo est haeres viventis.*" The indiscriminate use of the word heirs, when it was evident that children was meant, to designate the class of persons who were to take, upon a division of the lands after the termination of the life estate of the wife of the testator, evinces that the will was drawn by one not skilled in the drawing of such instruments, unacquainted with their forms, and unacquainted with the technical meaning and force of the expressions employed. Where this is the case, greater latitude of construction must be indulged, than where the instrument is drawn by a person acquainted with the meaning of the technical phrases and words used.—*May v. Ritchie*, 65 Ala. 602; *Campbell v. Noble*, 110 Ala 382.

We also think it is clear that James D. Truss, the son of the testator, only took a life estate in the lands, and that at his death, his heirs took the fee. This seems to us

quite plain from the language of the will, and there is no room for the contention that he took a fee tail, which under section 1021 of the Code is enlarged into a fee simple. Here the remainder is limited to the lawful heirs of James D. Truss, to whom a life estate in the same land was given, and upon the termination of his life estate, the plaintiffs, who are shown to be his lawful heirs, take as purchasers by virtue of such remainder—an estate protected and preserved by section 1025 of the Code. *Wilson v. Alston*, 122 Ala. 630.

The proceedings in the chancery court did not charge the share of James D. Truss, the son of the testator, with the debt which he owed to his ward, Coleman, for which his father was surety, and therefore did not condemn his share of the land. That proceeding is not a muniment of title for the defendant, and under the conveyances through which he claims title, he only acquired a life estate in the land. The life tenant having died in 1899, the plaintiffs having the fee simple title and a right to the possession of the land, the court properly rendered judgment in their favor.—*Pickett v. Pope*, 74 Ala. 122.

Affirmed.