179 So. 215

**BROADDUS v. JOHNSON.**

**8 Div. 812.**

Supreme Court of Alabama.

Feb. 10, 1938.

Andrews & Almon, of Sheffield, John H. Peach, of Decatur, and Canada & Russell, of Memphis, Tenn., for appellant.

Bradshaw & Barnett, of Florence, for appellee.

ANDERSON, Chief Justice.

Petition by the appellant, the duly qualified guardian of her ward, a non compos mentis, for the removal of the property of the ward from Lauderdale county, Ala., to Shelby county, Tenn., where both the guardian and the ward reside, and from which the letters of the guardianship were issued.

The general subject of guardian and ward is dealt with in chapter 299 of the Code of 1923, and the removal of the person or property is covered by article 10, § 8237 et seq., of said chapter 299, and sections 8241, 8243 bear specifically upon the point here involved.

Section 8241 reads as follows: "When the guardian and ward are both nonresidents, and the ward is entitled to any property in this state, or is, or will be entitled, to any money from any estate, the administration of which is pending in this state, whether such estate shall or shall not have been finally settled, and the money or property may be removed to another state without conflict with any restriction or limitation thereupon, and without impairing the right of the ward thereto, such money and property may be received and removed to the state of the residence of the ward, upon application of the guardian to the judge of probate of the county in which the property of the ward, or the principal part thereof, may be, or in which such administration may be pending, in the manner following."

Section 8243 provides the procedure or remedy for the removal, and which says: "The guardian must produce a transcript from the records of a court of competent jurisdiction, certified according to the act of congress, showing that he has been appointed guardian of the minor in the state in which he and the ward reside, and has duly qualified as such according to the laws thereof, and given bond, with surety, for the performance of his trust; and must also give ten days' notice to the resident executor, administrator, or guardian, if there be such, of the intended application; thereupon if good cause be not shown to the contrary, and the judge of probate shall be satisfied, upon proof being made, that it will be for the interest of the minor, such judge of probate must make an order

granting such guardian leave to remove the property of his ward to the state or place of his residence, which is an authority to him to sue for and recover the same, in his own name for the use of his ward."

There can be no doubt that section 8241, standing alone, is broad enough to grant the right of removal of the property of all wards whether minors or persons of unsound mind. But it is contended that, as section 8243 uses the word "minor" and not "ward," it does not extend to persons of unsound mind.

■ We think this contention is entirely too literal or technical, and that chapter 299 was intended to cover the general scope of guardian and ward, including those of unsound mind as well as minors, and the word "minor," as it appears in section 8243, must of necessity be construed as "ward" in order to effectuate the manifest intent of the lawmakers as gathered from all the provisions on the subject.

■ Under the common law, an executor, administrator, or guardian had no power or rights over the property of the decedent or ward lying beyond the confines of the country which granted his letters. It was early recognized that this rule was impractical and not in the interest of the estates. European courts long ago recognized the necessity for adopting rules of comity, under which recognition would be given to the inherent rights of a domiciliary administrator or guardian. In 1876, Judge Stone of the Alabama Supreme Court, in the case of Metcalf v. Lowther's Executrix, 56 Ala. 312, said: "In Wharton Conflict of Laws, § 259, it is said: 'The state wherein a ward is domiciled is that which, both in interest and in conscience, is charged with his protection; and it is that, therefore, which, on general principles, should nominate and direct the guardian of such ward. Hence, by the uniform practice of European continental states, the guardian appointed by such home authority has control of his ward's estate abroad, as well as at home. * * * This, however, does not prevent the appointment of special, subordinate guardians, to take charge of the ward's estate in remote territories.' * * * 'Whatever may be the differences in the positive laws of different states, with respect to the mode of constituting a guardian, the rule of international comity imperatively demands, that a guardian, duly constituted according to the laws of the

domicile of the ward, should be recognized as such by all other countries.' "

Further along in the opinion, the court says: "For general purposes, personal property is not localized—has no independent situs. It follows the residence of the owner; and, in case of his death, it is distributed according to the law of his domicile."

Quoting from the same opinion: "There is an eminent propriety in having the personal effects of a ward in the same jurisdiction in which such ward has his or her residence. It will, as a general rule, be better cared for and administered at that place. * * * Many other reasons * * * will suggest themselves, why the personal property of the ward should be under the control of the guardian, who has the custody of the ward."

The states of the Union early recognized the necessity for modifying the severe rule of the common law, and the state of Alabama enacted statutes providing for the removal from this state by domiciliary executors, administrators, and guardians, of the real and personal property of testators, intestates, and wards to the state where the domiciliary administration or guardianship was being conducted.

■ While the heading of article 10 of chapter 299 of the Code is "Removal of Person or Property of Ward to Another State," and while some of the individual sections under the article employ the word "ward" and some of them employ the word "minor," a careful reading of the article, in the light of the decisions of our Supreme Court, taking into consideration the purpose and intent of the Legislature, makes it clear that the purpose of the article is to provide for the removal of a ward's Alabama property by the foreign guardian, whether that guardian be the guardian of a minor or of a person of unsound mind. This whole article must be construed together, and the sections above referred to must be read in connection with the general system of laws in Alabama providing for removal of property from this state by foreign executors, administrators, and guardians.

■■ We, of course, are not unmindful of the general rule that when statutes are enacted in derogation of the common law, they must be strictly construed, but that does not require a literal and blind adhesion to mere words. It does not mean

that the letter instead of the spirit should prevail.

"A thing may be within the letter of a statute and not within the meaning or spirit, or it may be within the clear meaning or spirit and not within the letter. Courts, in construing statutes, often look less to the letter than to the context, the spirit, or to the meaning of the statutes to arrive at the true intent of the lawmaker. Statutes are often drawn inartificially. Apt words are not always used, and perspicuity and precision are not always observed, by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent." City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, 162; Jefferson County v. Hawkins, 232 Ala. 398, 168 So. 443; Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422.

"The spirit and not the letter should prevail when the latter would lead to an injustice or absurdity." Tennessee Coal, Iron & R. Co. v. State, ante p. 152, 177 So. 905, 906, and cases there cited.

The trial court erred in sustaining the demurrer to the petition and in dismissing same, and the judgment of the probate court is reversed and the cause is remanded.

Reversed and remanded.

THOMAS, BROWN, and KNIGHT, JJ., concur.