7 So.2d 269

### GEORGE v. WIDEMIRE.

7 Div. 649.

Supreme Court of Alabama.

March 12, 1942.

Rehearing Denied April 16, 1942.

London & Yancey, Fred G. Koenig, Sr., and Frederick Koenig, Jr., all of Birmingham, for appellant.

C. W. Stringer and Knox, Dixon, Dixon & Wooten, all of Talladega, for appellee.

LIVINGSTON, Justice.

D. A. Parker, a resident of Sylacauga, Talladega County, Alabama, died at Sylacauga in July 1930, leaving the following instrument as his last will and testament:

"State of Alabama.
"Talladega County.

"I, D. A. Parker a resident of Talladega County, Alabama, and over the age of twenty-one years of sound mind and of a disposing memory do hereby make and publish my last will and testament.

"First. I will that all my debts be paid as soon as practical after my death.

"Second. I will to my wife Lutie O. Parker a life state in and to all the real estate personal property, including stocks, bonds, notes and life insurance, except one policy in the Pacific Mutual which is payable to my daughter Grace Parker Webster, now residing in Dallas, Texas.

"Third. I bequeath to my four children or their heirs, share and share alike in and to any real or personal property left from my estate at the death of my wife.

"Fourth. I appoint my son, Howard A. Parker now of Dublin, Georgia, as executor of this my last will and testament and declare that he shall not be required to give bond for the performance of his duties hereunder. But he shall make a complete inventory of all property at my death and render his mother yearly statements of the estate during her life, and at her death make a complete settlement with my other children or their heirs.

"Witness my hand this the 29th day of March, 1924.
"Witness D. A. Parker, Seal.
"J. R. Blankenship
"George J. Atkinson"

The will was duly admitted to probate on October 14, 1930, and letters testamentary issued to Howard A. Parker, who proceeded to administer the estate during the lifetime of the widow, Mrs. Lutie O. Parker, who died on June 10, 1934. Christine Parker George, one of the four children referred to in the will and a resident of the state of California, died intestate in that state in January 1933, leaving surviving her husband, Edward Palmer George, Sr., the appellant, and one son, Edward Palmer George, Jr. On September 10, 1934, appellee, E. L. Widemire, was duly appointed guardian of the estate of Edward Palmer George, Jr., a minor, by the Probate Court of Talladega County, Alabama.

On May 30, 1935, Howard A. Parker made final settlement and distribution of the estate of D. A. Parker, deceased, and appellee, E. L. Widemire, as guardian of the estate of Edward Palmer George, Jr., received for his ward, among other things,

a net one-fourth distributive share of said estate, being the same share which his ward's mother, Christine Parker George, deceased daughter of D. A. Parker, would have received had she survived her mother, Mrs. Lutie O. Parker, owner of the life estate under the will.

The property received by E. L. Widemire, as guardian of the estate of Edward Palmer George, Jr., from the distribution of the estate of D. A. Parker, deceased, consisted of the following: cash $3.07; common stock, 22½ shares of the capital stock of the Parker Gin Company, Inc., 15¾ shares of the capital stock of the Sylacauga Bonded Warehouse, Inc., and 12½ shares of the capital stock of the Sylacauga Fertilizer Company, Inc.

On June 9, 1938, the guardianship of the estate of Edward Palmer George, Jr., a minor, was removed from the Probate Court of Talladega County, Alabama, to the Circuit Court of Talladega County, in equity.

On June 10, 1938, Edward Palmer George, Sr., the father of Edward Palmer George, Jr., under and by virtue of the provisions of section 8237 et seq., Code of 1923, Code 1940, Tit. 21, § 109 et seq., filed in the Circuit Court in equity of Talladega County a written application for an order of removal of the property of the minor, Edward Palmer George, Jr., to the state of California, alleging that the applicant and minor were residents of that state; that Edward Palmer George, Sr., had been duly appointed guardian of the person and estate of Edward Palmer George, Jr., a minor, by the Superior Court of the state of California in and for the county of Los Angeles, and had made good and sufficient bond for the faithful performance of the duties of such guardian.

E. L. Widemire, as guardian, answered the application and made his answer a cross-bill. The amended answer and cross-bill alleges, in substance, that the father claims an interest in the property in the hands of E. L. Widemire, the Alabama guardian, adverse to that of the minor child, the father claiming an undivided one-half interest in and to the property in the custody and control of E. L. Widemire as Alabama guardian, which he received as the minor's distributive share of the estate of D. A. Parker, deceased; that the Alabama guardian has filed proceedings in the Probate Court of Talladega County to sell the stocks as required by section 74 of the Constitution of Alabama; that the father of said minor has obtained an injunction in the federal court against such sale; that all of the property in his hands as guardian is the sole property of the minor; that it is to the best interest of the minor that the stocks be sold for reinvestment.

The answer of petitioner and cross-respondent to the cross-bill alleges that he, as the husband of Christine Parker George, does claim an undivided one-half interest in and to the stocks above mentioned by virtue of the laws of the state of California; that under the laws of California the stocks may be retained as an investment of the ward's estate; that it is not to the best interest of the minor that the stocks be sold for reinvestment; that the efforts to sell said stocks and to prevent their removal from Alabama to the custody of the California guardian were not in furtherance of the best interest of the minor, but were made to further the interest of E. L. Widemire and Howard A. Parker.

It will be observed that Christine Parker George, a daughter of D. A. Parker, died after the death of her father, but before the death of her mother, the life tenant under the will.

As we view the record four principal questions are presented for review: (1) Is Edward Palmer George, Sr., the owner of an one-half interest in and to the stocks described above? If Christine Parker George took a vested interest under the will of D. A. Parker, deceased, then it is agreed that Edward Palmer George, Sr., her husband, is the owner of one-half that interest under the laws of California, and the son Edward Palmer George, Jr., is the owner of the other one-half interest. (2) Should the ward's estate be removed to the state of California? (3) Should the Alabama guardian be removed from office? (4) Should the interest of Edward Palmer George, Jr., in the estate, consisting of corporate stocks be retained by the guardian as a legal investment? The decree of the trial court answered all of these questions in the negative.

The first question to be determined is whether Christine Parker George took a vested interest under the will of D. A. Parker, or whether her interest was either a contingent interest or a vested interest subject to be divested upon her death before the death of the life tenant. Section 6902, Code of 1923, Title 47, section

137, Code of 1940, is as follows: "No estate in lands can be created by way of contingent remainder; but every estate created by any will or conveyance, which might have taken effect as a contingent remainder, has the same properties and effect as an executory devise." Remainders are either vested or contingent. "A vested remainder is one limited to a certain person at a certain time, or upon the happening of a necessary event. A contingent remainder is one limited to an uncertain person, or upon an event which may or may not happen." Section 6905, Code of 1923, Title 47, section 140, Code of 1940.

"A remainder is said to be vested when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines, when a present interest passes to a certain and definite person, to be enjoyed in futuro, and is said to be contingent when the estate is limited either to a dubious and uncertain person, or upon the happening of a dubious or uncertain event,—uncertainty of the right of enjoyment, as distinguished from the uncertainty of possession." Phinizy v. Foster, 90 Ala. 262, 7 So. 836, 837; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72.

The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment, and this being true, it is held: "The intent to postpone the vesting of an estate must be clear, and must not arise by mere inference or construction." Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 674; Pearce v. Pearce, 199 Ala. 491, 74 So. 952, 954. But, as stated by Justice Clopton in the case of Phinizy v. Foster, supra: "The rule is generally applied when the intention of the testator is obscure and doubtful. It has no application when the intention to create contingent legacies or devises is clear. In respect to each of the rules the intention of the testator, as shown by the words employed by him, must control."

In the case of Wright v. City of Tuscaloosa, supra, Mr. Justice Knight, quoting from Watters v. First National Bank of Mobile, 233 Ala. 227, 171 So. 280, said [236 Ala. 374, 182 So. 75]: "Much stress is laid upon the principle that the law inclines to regard legacies as vested, rather than contingent, and the numerous authorities noted by the chancellor so announce this rule. But the basis of this rule rests in the presumption that the testator had in view the interest of the legatee who is the object of his bounty (Travis v. Morrison, 28 Ala. 494), and the question recurs, to the mind of the testator, as to what he considers to the best interest of the object of his bounty. If the whole scheme of the testator, as gathered from the entire will, discloses that he considered an early vesting of interest in his children not to their advantage, then, of course, the reason for the rule and its foundation would fail, and it would lose its significance. As said in the Travis case, supra (cited approvingly in a number of cases, First Nat. Bank v. Cash, 220 Ala. 319, 125 So. 28). 'The law does not favor the vesting of legacies, contrary to the testator's intention, as inferred from an examination of the entire will.' "

The cardinal rule in the construction of a will is to ascertain the intention of the testator and give it effect if not in contravention of some rule or principle of law. Edwards et al. v. Bibb et al., 43 Ala. 666; Schowalter v. Schowalter, 217 Ala. 418, 116 So. 116; Fowlkes v. Clay, 205 Ala. 523–525, 88 So. 651; Reid v. Armistead, 228 Ala. 75, 151 So. 874; Watters v. First Nat. Bank, 233 Ala. 227, 171 So. 280; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72; First National Bank of Tuskaloosa v. Hill, 241 Ala. 606, 4 So.2d 170.

In endeavoring to construe a will according to the testator's intention, the court will put itself as far as possible in the testator's position by taking into consideration the circumstances surrounding him at the time of the execution of the will and look to his mode of thought and living, his relations to or associations with the objects of his bounty and their age, condition, dependence and the like, for it is presumed that the testator had in view the interests of the legatees who are the objects of his bounty. Fowlkes v. Clay, supra; First Nat. Bank v. Sheehan, 220 Ala. 524, 126 So. 409; Spencer v. Title Guarantee Loan & Trust Co., 222 Ala. 485, 132 So. 730; Hammond v. Bibb et al., 234 Ala. 192, 174 So. 634; Montgomery v. Montgomery, 236 Ala. 161, 162, 181 So. 92; 69 Corpus Juris 63.

Where, as here, the will is written by the testator himself, who was not a lawyer or skilled in such matters, greater latitude should be given in determining the intention of the testator than if it had been

drawn by an experienced hand. May v. Ritchie, 65 Ala. 602; Campbell v. Noble, 110 Ala. 382, 19 So. 28; Watson v. Williamson et al., 129 Ala. 362–368, 30 So. 281; Turk v. Turk, 206 Ala. 312, 89 So. 457.

When that intention, if lawful, is once ascertained, it is the duty of the court to declare and enforce it. Such intention is to be ascertained by referring to the language employed and the associated circumstances. To aid in ascertaining this fact certain well-recognized rules have been established, among which are the following: The law favors the early vesting of devised estates, and it is presumed that words of survivorship relate to the death of the testator, if fairly capable of such construction, and that no estate will be held contingent unless positive terms are employed by testator annexing futurity to the substance of the devise or bequest which clearly indicates the intention of the testator to limit it to take effect upon a dubious or uncertain event. In such case the vesting of the devise or bequest is suspended until the happening of the event.

At the time the will was executed Mr. Parker's family consisted of his wife, Lutie O. Parker, to whom he gave the life estate mentioned in the will, and who died June 10, 1934. Grace, a daughter, married J. H. Kerr in 1925, having been divorced from her first husband. She had no children living by the first marriage, but two children by the second marriage, one born in 1928 and the other in 1929. Grace died in 1938. Howard, a son, who married in 1921, and who had two children, one born in 1929 and one born subsequent to the death of the testator in 1934. Mary, a daughter, who married E. L. Widemire in 1921, and to which marriage three children were born, one in 1925, one in 1928 and one in 1932. Christine, a daughter, was unmarried at the time the will was executed and at the date of testator's death. She married Edward Palmer George, Sr., in August 1930, and Edward Palmer George, Jr., was born October 12, 1932.

Manifestly, the use of the words "or their heirs," used twice in the short will was intended by the testator to have some significance. The words "heir" or "heirs" are technically words of limitation, but they are used as words of purchase and always have that operation when it sufficiently appears that the term is used to designate a particular person, or persons who may stand in that relation at the happening of a certain event, or at a certain period, and not to the whole line of heirs in succession. Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; Ebey v. Adams, 135 Ill. 80, 25 N.E. 1013, 10 L.R.A. 162; Wyman v. Kinney, 111 Vt. 94, 10 A.2d 191, 128 A.L.R. 298. See, also, Blake v. Stone et al., 27 Vt. 475–477.

The signification of the word is in all cases a question of intention. "Heirs" is very generally construed as meaning children where it is necessary that the term be so construed in order to carry out the clear intent of the instrument, or where it is plain that it is used in a popular sense, as a word of description referring to a certain class of persons. 21 Cyc. 418; Castleberry v. Stringer, supra; Wilcoxen v. Owen, 237 Ala. 169, 185 So. 897, 125 A.L.R. 539.

Appellee argues that in the larger number of cases, similar to the one here involved, the courts have construed "or" as "and".

In the case of Taylor v. Taylor, 118 Iowa 407, 92 N.W. 71, the Court said: "To treat 'or' as 'and' in construing the will would render the whole clause meaningless, as without it the fee would have passed to the children [citing Code]. But we are not permitted to reject clauses, nor arbitrarily to substitute one word for another. This can only be done when imperatively demanded in order to carry out the intentions of the testator. * * * No doubt there are decisions holding that in a devise to one or his heirs, issue, or the like, whatever the form of expression, the word 'or' should be construed as 'and.' See cases collected in note to Janney v. Sprigg, 48 Am.Dec. 570. On this subject Judge Redfield * * * says: 'There is also a class of cases, somewhat numerous, where the word "or" is interposed between the name of the first legatee or devisee and the heirs of such person,—as, to A or his heirs, forever, or in tail,—in regard to which there has been considerable discussion, and where there does not seem to be perfect coincidence. Some of the earlier cases where this occurs incline to treat the variation from the usual form of creating such limitations as merely accidental, and as not being intended to create any different estates. The cases where the word "or" being interposed between the name of the first devisee or legatee and his heirs has been held to indicate the intention of substituting the latter in place of the ancestor are numerous, and, being more

recent, as a general thing, and more in consonance with the words used, must be regarded as defining the most reliable rule.' 1 Redf.Wills, 486."

And in Fisher v. Barcus, 14 Del.Ch. 324, 127 A. 53–55, the court said: "Whatever may have been the rule formerly, the weight of authority now is that a gift after a life estate to 'A or his heirs' creates a substitutionary right in the heirs, who in case of A's death before the period of payment take in their own right as substitutes in place of A in whom no transmissible and indefeasible interest had vested."

"No one can have heirs while living. The word 'or,' therefore, as here used, indicates substitution." Ebey v. Adams, supra [135 Ill. 80, 25 N.E. 1016, 10 L.R.A. 162].

For other cases giving a similar meaning to the word "or," see Union Safe Deposit & Trust Co. v. Wooster, 125 Me. 22, 130 A. 433; Potter v. Potter, 306 Ill. 37, 137 N.E. 425; Levings v. Wood, 339 Ill. 11, 170 N.E. 767; In re Evans' Will, 234 N.Y. 42, 136 N.E. 233; Waxson Realty Co. v. Rothschild, 255 N.Y. 332, 174 N.E. 700; Delaware County Trust Co. v. Hanby, 19 Del. Ch. 228, 165 A. 568.

The pertinent provisions of the will are, "To my four children or their heirs any * * * property left from my estate at the death of my wife * * * and at her death make a complete settlement with my other children or their heirs."

We are clear to the conclusion that in the instant case we are justified in departing from the strict legal interpretation of the word "heirs," and in holding that this word was used as synonymous with and in lieu of the word "children," and that the testator intended to use "or" in its usual disjunctive sense of substitution. It would seem equally clear, therefore, that the persons who are to take are such of the testator's children as might be living at the time of the distribution, and the children of such as might have predeceased. The vesting of the estate in interest, as well as in possession, in the children of the testator, depended upon their surviving the day of distribution. In other words, time is of the substance of the gift, and relates to the vesting of the legacies in interest, as well as in possession.

It must be considered that the testator intended to create, as to his four children, contingent and not vested remainders, for where time is of the substance of the bequest and the event upon which it is to take effect, the survivorship of one over the other is always an uncertain or dubious event.

*It follows that the learned trial* judge correctly ruled that Edward Palmer George, Sr., is not the owner of an one-half interest in or to the stocks involved.

We turn to the question of the right of removal of the estate of Edward Palmer George, Jr., *to the state of California, the* state of his residence and the residence of his father who has been duly appointed his guardian under the laws of that state.

Section 8237 et seq. of the Code of 1923, Code 1940, tit. 21, § 109 et seq., provide:

Section 8237. "When the parent having the legal custody of a minor child, whether the father or mother, resides without the state, or removes with such child from the state, becoming a resident of another state, the court of probate, or the circuit court, or court having jurisdiction of chancery matters, having jurisdiction of the estate of the minor, has authority to order the removal of the property of the minor to the state of the residence of the parent."

Section 8238. "The application for the order of removal must be made by the parent, must be in writing, verified by affidavit, accompanied by a transcript duly certified, of the appointment of a guardian for such minor by a court of competent jurisdiction in the state of the residence of the parent, and of the bond of such guardian, with sureties approved by such court, and in a penalty equal to double the value of the property which is to be removed."

Section 8239. "The court, if satisfied of the truth of the application, and that the transcript of the appointment of the guardian in the state of the residence of the parent is in due form, and properly certified, and that the court making the appointment had jurisdiction, must make an order authorizing the removal of the property of the minor, and authorizing such guardian to receive the same."

Section 8240. "If such minor have a guardian in this state, of the appointment of the court, or subject to the jurisdiction of the court, an order must be made and entered, requiring such guardian to make a final settlement of his guardianship."

The record discloses a strict compliance with the foregoing provisions of the Code of this State in making application for the

removal of the estate of the minor to California.

In the case of Broaddus v. Johnson, 235 Ala. 314, 179 So. 215, 216, this Court, speaking through the late Chief Justice Anderson, said:

"Under the common law, an executor, administrator, or guardian had no power or rights over the property of the decedent or ward lying beyond the confines of the country which granted his letters. It was early recognized that this rule was impractical and not in the interest of the estates. European courts long ago recognized the necessity for adopting rules of comity, under which recognition would be given to the inherent rights of a domiciliary administrator or guardian. In 1876, Judge Stone of the Alabama Supreme Court, in the case of Metcalf v. Lowther's Executrix, 56 Ala. 312, said: 'In Wharton Conflict of Laws, § 259, it is said: "The state wherein a ward is domiciled is that which, both in interest and in conscience, is charged with his protection; and it is that, therefore, which, on general principles, should nominate and direct the guardian of such ward. Hence, by the uniform practice of European continental states, the guardian appointed by such home authority has control of his ward's estate abroad, as well as at home. * * * This, however, does not prevent the appointment of special, subordinate guardians, to take charge of the ward's estate in remote territories." * * * "Whatever may be the differences in the positive laws of different states, with respect to the mode of constituting a guardian, the rule of international comity imperatively demands, that a guardian, duly constituted according to the laws of the domicile of the ward, should be recognized as such by all other countries." '

"Further along in the opinion, the court says: 'For general purposes, personal property is not localized—has no independent situs. It follows the residence of the owner; and, in case of his death, it is distributed according to the law of his domicile.'

"Quoting from the same opinion: 'There is an eminent propriety in having the personal effects of a ward in the same jurisdiction in which such ward has his or her residence. It will, as a general rule, be better cared for and administered at that place. * * * Many other reasons * * * will suggest themselves, why the personal property of the ward should be under the control of the guardian, who has the custody of the ward.'

"The states of the Union early recognized the necessity for modifying the severe rule of the common law, and the state of Alabama enacted statutes providing for the removal from this state by domiciliary executors, administrators, and guardians, of the real and personal property of testators, intestates, and wards to the state where the domiciliary administration or guardianship was being conducted."

We have held that the father has no interest in or to the property here involved. There is no evidence to indicate that the father is not a proper person to act as guardian of the person and estate of his minor son. California is the domicile of the minor. He owns the personal property which is the subject matter of this suit, and personal property follows the residence of the owner, and so far as the owner is concerned should be administered in accordance with the laws of the state of his domicile. Metcalf v. Lowther's Ex'x, 56 Ala. 312; Broaddus v. Johnson, supra.

Under the evidence, the laws of the state of California authorize the California guardian to retain the stocks here involved as a part of the minor's estate, and the laws of that state should control their disposition.

The trial court erroneously refused to make an order authorizing the removal of the property of the minor, and authorizing the California guardian to receive the same. The Alabama guardian should not be removed from office, but the trial court should make and enter an order requiring the Alabama guardian to make a final settlement of his guardianship under the provisions of section 8240, Code of 1923.

For the error pointed out, the cause must be reversed and remanded.

Reversed and remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.